Reid SCOFIELD, Plaintiff,

v.

TELECABLE OF OVERLAND PARK, INC., Defendant.

Debbie D. ANDERSON, Plaintiff,

v.

TELECABLE OF OVERLAND PARK, INC., Defendant.

Civ. A. Nos. 89–4014–S, 89–4015–S.

United States District Court, D. Kansas.

Nov. 13, 1990.

---

Steven D. Treaster, Lenexa, Kan., for plaintiffs.

R. Kent Sullivan, James W. Howard, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., Frances J. Chetwynd,

**1502**

Paul Glist, Cole, Raywid & Braverman, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the parties' cross-motions for summary judgment in both of the above-captioned companion cases. Because case no. 89–4014–S and case no. 89–4015–S involve the same fundamental questions of fact and law, and seek the same relief, these cases will be consolidated for purposes of considering the parties' cross-motions for summary judgment. Fed.R.Civ.P. 42(a); *Ringwald v. Harris*, 675 F.2d 768, 770–71 (5th Cir. 1982); *Wilson v. Watson*, 309 F.Supp. 263, 268 (D.Kan.1968).

In these actions, this court is once again asked to interpret the subscriber privacy provisions of the Cable Communications Policy Act of 1984 (hereafter referred to as "the Cable Act" or "the Act"), 47 U.S.C. §§ 521 *et seq.*[1] Plaintiffs Reid Scofield ("Scofield") and Debbie D. Anderson ("Anderson") allege that defendant TeleCable of Overland Park, Inc. ("TeleCable"), which provided cable television services to their respective residences, violated the disclosure and record-keeping provisions of Section 551 of the Cable Act. Because the court finds that oral argument would not be of material assistance in its determination of the motions before it, defendant's requests for oral argument are denied. D.Kan. 206(d).

### I. *Statement of Facts: Scofield*

For purposes of the parties' present motions, the court finds the following facts to be uncontroverted. On February 21, 1985, defendant TeleCable of Overland Park, Inc. ("TeleCable") entered into an agreement to provide cable television service at 10745 Barton, Overland Park, Kansas to plain-

tiffs Reid Scofield ("Scofield"). On February 21, 1985, TeleCable began to provide Scofield "cable service," as that term is defined in the Act. The service provided by TeleCable included video programming and rebroadcast of the television broadcast signals of local Kansas City television stations. At all relevant times, TeleCable was a "cable operator" as that term is used in the Act. From February 21, 1985, until the cable service was disconnected on December 28, 1988 at 10745 Barton, Overland Park, Kansas, Scofield was a "subscriber" of the cable service provided by TeleCable. On January 6, 1989, Scofield's cable service was reconnected at another address where he is still a subscriber at present; Scofield's subscription has been continuous since 1985. During the time that Scofield received cable service from TeleCable, he never requested new, improved, or expanded cable service, except by his use of pay-per-view service. It is undisputed that Scofield has never given written consent or "electronic consent" (as that term is defined in the Act) for TeleCable to disclose personally identifiable information concerning him.

In this action, Scofield alleges that he never received an SPN from TeleCable when he first began subscribing to TeleCable's services in February 1985. In his amended complaint, he also alleges that he did not receive an annual notice in May 1988, as required by the Act. It is, however, essentially undisputed that TeleCable sent subscriber privacy notices annually to all of its subscribers, including Scofield, in connection with its May billing for cable service in 1985, 1986, 1987 and 1988. It is also undisputed that Scofield received and paid his May bill for cable service each year, from 1985 through 1988.

As stated above, TeleCable sends an SPN to all subscribers annually along with May bills for cable service. Actual inser-

---

1. The privacy protection provisions are found in section 631 of the Cable Communications Policy Act of 1984 and are codified at 47 U.S.C. § 551. In this Memorandum and Order, the privacy protection provisions will be referred to as section 551.

A previous decision of this court interpreting the Cable Act, *Warner v. American Cablevision of Kansas City*, 699 F.Supp. 851 (D.Kan.1988), was remanded with instructions to vacate; settlement having been reached during the appeal to the Tenth Circuit Court of Appeals. No. 1880–2820 (10th Cir., *unpublished*, Jan. 6, 1989).

tion and mailing of the SPNs is done by CableData, TeleCable's billing contractor. Since prior to 1985, the process for mailing and inserting the SPNs has been automated and subject to multiple quality control procedures to guarantee accuracy and reliability. Inserts are given a reference number and "insert plans" are prepared several weeks in advance of the scheduled mailing. Billing data, stored on magnetic tap and updated every month, is used to generate bills. Cartons of inserts are delivered to inserting machines in CableData's Insert Receiving Department at the same time the printed statements for a particular insert plan are received from the laser printers. The "Insert Stager" verifies the inserts for each plan according to insert identification number. During the inserting process for each insert plan, CableData's Quality Control Group opens a random sample of envelopes to check that the proper inserts are enclosed. Further, after insertions are complete the trays of envelopes are weighed to check that all programmed inserts were actually inserted. CableData mails approximately 25 million bills for cable service each month and approximately 40 million inserts.

All pre–1989 notices sent by TeleCable to its subscribers are basically the same. The subscriber privacy notice issued by TeleCable from 1985 through 1988 (hereafter referred to as "the pre–1989 SPN"), set in eight-point type, stated as follows:

### TELECABLE

#### Subscriber Privacy Notice

As a subscriber of cable services, you are entitled under federal law to know the following:

1. In order that we may continue to provide reliable, high quality service to you, we keep regular business records that contain your name, address, and other personally identifiable information. Such records include billing, payment and deposit records, records indicating the number of your television sets connected to cable, and the service options you have chosen. We use this information to make sure that you are being billed properly for the services you receive.

2. We consider information we keep to be confidential. We may collect personally identifiable information from you and may disclose it to a third party if (a) you consent in advance in writing or electronically; (b) disclosure is necessary to render cable service and (c) disclosure is required pursuant to a court order and you are notified of such order. (For example, we may without your consent disclose your name and address to a collection service if required to collect past due bills).

3. Unless you object, from time to time, we may also disclose your name and address for mailing lists and other purposes permitted by law. We will not disclose the extent of your viewing or use of a particular service or the nature of any transaction you may make over the cable system, but we may disclose that you are among those who subscribe to a particular service. If you wish to remove your name from such lists or limit the use of your name at any time, please contact us at the system office.

4. We may also electronically test the system from time to time to determine whether you are being billed properly for the cable services you are receiving.

5. We will maintain information about you for as long as we provide service to you and for a longer time if necessary for related business activities. When information is no longer necessary for our purposes, we will destroy the information unless there is a legitimate request or order to inspect the information still outstanding.

6. You have the right to inspect our records that contain information about you, correct any error in our information, and enforce your rights under federal law. If you wish to inspect the records at our system office pertaining to you, please contact us to set up an appointment during regular business hours.

# 4664

On January 6, 1989, TeleCable, by its agent K & W, Inc., installed new cable service at Scofield's new residence at 10193 Rosehill Road, Overland Park, Kansas. In conjunction with the installation, Scofield received another subscriber privacy notice. The parties apparently disagree regarding whether the SPN received at installation was in the pre–1989 or in the revised 1989 form. TeleCable disputes that Scofield received the revised 1989 SPN prior to a January 13 and 17, 1989, mailing of the revised notice to all TeleCable subscribers. The revised SPN (hereafter, referred to as the "1989 SPN"), states as follows:

### TELECABLE

### Subscriber Privacy Notice

As a subscriber of cable services, you are entitled under federal law to know the following:

1. In order that we may continue to provide reliable, high quality service and maintain adequate records, we keep regular business records that contain your name, address, telephone number, and other personally identifiable information. Such records include billing, payment, deposit, complaint and service records, records of information you have furnished to us, such as the location and number of television sets connected to cable, and the service options you have chosen. We use this information to sell, maintain, disconnect and reconnect services; to make sure that you are being billed properly for the services you receive; and to maintain financial, accounting, tax, service and property records.

2. We consider information we keep to be confidential. We may collect personally identifiable information from you and may disclose it to a third party if (a) you consent in advance in writing or electronically; (b) disclosure is necessary to render cable service and other services we provide to you and related business activities; or (c) disclosure is required pursuant to a court order and you are notified of such order. We may make your records available routinely to employees, agents and contractors to install, market, provide and audit cable service; to an independent billing house to send bills; to a mail house to send program guides; to programmers and outside auditors to check our records; to attorneys and accountants as necessary to render service to the company; to purchasers in connection with a system sale; to franchising authorities to demonstrate compliance; and to collection services if required to collect past due bills. The frequency of disclosure varies according to business needs. We may also electronically test the system from time to time to determine whether you are being billed properly for the cable services you are receiving.

3. Unless you object, from time to time, we may also disclose your name and address for mailing lists and other purposes permitted by law. We will not disclose the extent of your viewing or use of a particular service or the nature of any transaction you may make over the cable system, but we may disclose that you are among those who subscribe to a particular service. If you wish to remove your name from such lists or limit the use of your name at any time, please contact us at the system office.

4. We will maintain information about you for as long as we provide service to you, and for a longer time if necessary for our business purposes. When information is no longer necessary for our purposes, we will periodically destroy the information unless there is a legitimate request or order to inspect the information still outstanding.

5. You have the right to inspect our records that contain information about you and to correct any error in our information. If you wish to inspect the records at our system office pertaining to you, please contact us to set up an appointment during regular business hours. Federal law limits the collection and disclosure of these records. If your rights under federal law are violated, you may bring a private action in federal district court to remedy that violation. In addition, the government may obtain

disclosure of personally identifiable information by court order, if it offers evidence that such records are material to a criminal case, and if you are given the opportunity to appear and contest the evidence.

### TeleCable of Overland Park, Inc.

8221 W. 119th Street (66213–1209)
P.O. Box 12922
Overland Park, Kansas 66212–0922
(913) 451–8787

It is apparently undisputed that TeleCable has retained certain information relating to Scofield including: a copy of the initial work order (retained for one year after installation of service); Scofield's name, address, and telephone number; Scofield's account number, initial level of service (premium channel and pay-per-view events) and the level or service at the time of disconnection; information relating to the location of the cable outlet, number and physical location of the cable outlets, date of installation, date of disconnection, billing dates, the aging of Scofield's account, Scofield's billing and payment history, Scofield's refund history, record of requests to TeleCable; whether Scofield was an owner or renter; the date bills (and inserts) were mailed; converter record; whether Scofield was a new or "restart" customer; whether Scofield requested removal of his name from subscriber lists for privacy reasons; and tag numbers identifying individual subscriber drop lines.

Although the parties choose to characterize TeleCable's record-keeping policies in relation to subscriber information differently, the relevant facts are essentially undisputed. TeleCable has no written policy regarding retention and destruction of subscriber information. As set out in the SPNs, however, its general policy is to keep such information so long as TeleCable provides service to the subscriber and "for a longer time if necessary for our business purposes." TeleCable's principal repository of subscriber information is an electronic data base or Management Information System ("MIS"). Scofield has not contradicted TeleCable's assertion that the computer program for TeleCable's MIS directs the computer to display current information in a subscriber file and to drop information that is no longer current. Under the MIS, non-current information is periodically purged from the system to make additional disk space. Ledger data (billing data), for instance, is retained in the subscriber file for 60–90 days.

TeleCable also has supplementary record systems. "Hard copy" is necessary for some data, such as the data on a work order which must be carried by the technician to the work location. The time period during which such documents are maintained varies depending on TeleCable's asserted "business need," for up to one year for installation work orders. Some "hard copy" items, such as disconnect work orders, are discarded immediately. The only "hard copy" item kept for longer than one year is the converter receipt, which is kept until the subscriber returns the equipment. TeleCable's second supplementary record-keeping system is its historical ledger microfiche which preserves accounting data and supporting billing data in microfiche form for reference purposes. Each historical ledger microfiche contains billing records for over two thousand subscribers. Special equipment is needed to make copies, and TeleCable does not have such equipment in Overland Park. TeleCable presently has microfiche records for each month since the Cable Act was passed. TeleCable keeps two copies of its historical ledger microfiches, one copy at the corporate headquarters of TeleCable's parent company and one copy at TeleCable's system offices in Overland Park. The microfiches can be reviewed at Overland Park, but Overland Park does not have the necessary equipment to make hard copy from the microfiches. TeleCable has not yet destroyed post-Cable Act historical ledger microfiche for the stated reason that to do so would be contrary to federal law requiring retention of financial records.

With regard to TeleCable's release of subscriber information to third parties, the relevant facts are similarly undisputed. TeleCable generally states that it does not release subscriber names and addresses to

any third party except in connection with rendering cable service, nor does TeleCable use subscriber names and addresses for any purpose except to render cable service. TeleCable states that information in addition to subscriber names and addresses is disclosed only to conduct "legitimate business activities related to cable service." Specifically, TeleCable provides subscriber information to an independent billing house ("Cable Data") to send bills and independent contractors installing cable service ("K & W, Inc."). TeleCable also provides mailing labels to premium channels for purposes of sending program guides, to Johnson County Community College for mailings about credit courses available via cable and to consumer research organizations retained by NBC to recruit program research volunteers (through ASI Market Research, Inc.).

TeleCable's office hours at Overland Park are Monday through Thursday from 8:30 a.m. to 8:00 p.m., Friday from 8:30 a.m. to 5:00 p.m., and Saturday from 8:30 a.m. to 1:00 p.m. TeleCable's parent corporation occasionally conducts telephone market research surveys for TeleCable to determine current subscriber satisfaction. Survey data is listed in the aggregate, but seriously dissatisfied subscribers are identified to TeleCable's local office to attempt to resolve problems with the subscriber. TeleCable has never received a request from a subscriber for subscriber information in TeleCable's possession. If such a request were received, TeleCable has stated that it would most probably offer the subscriber use of a supervisor's office to view such information.

## II. *Statement of Facts: Anderson*

For purposes of the parties' cross motions for summary judgment in case no. 89–4015–S, the court finds the following facts to be undisputed. On April 22, 1987, defendant TeleCable entered into an agreement to provide cable television service to plaintiff Anderson. On April 22, 1987, TeleCable began to provide Anderson "cable service," as that term is defined in the Cable Act. The cable service provided included video programming and the rebroad-

cast of television broadcast signals of local Kansas City television stations. At all relevant times, TeleCable was a "cable operator" as that term is used in the Act. From April 22, 1987, until cable service was disconnected on June 1, 1989, Anderson was a "subscriber" of cable service provided by defendant, as that term is defined in the Act. During the time Anderson received cable service from TeleCable, she never requested new, improved or expanded cable service except for one month of free trial expanded service.

Anderson was not at her residence when cable service was installed at her residence on April 22, 1987. Thus, if TeleCable provided a section 551 disclosure statement to plaintiff at installation, the statement would have been delivered to plaintiff's husband, W. Bruce Anderson, through TeleCable's subcontractor, K & W, Inc. The only persons present at installation (and thus, the only persons who know whether a disclosure statement was provided at installation) were plaintiff's husband and an unknown cable installer from K & W, Inc. In this action, Anderson alleges that she never received a disclosure statement at the time of installation on April 22, 1987, or through early May 1987. TeleCable, however, disputes this alleged non-receipt by offering proof of regular procedures used by TeleCable to assure routine issuance of such statements to subscribers at installation. TeleCable also states that a subscriber privacy notice was sent to Anderson around the first of May 1987, along with her bill for service from April 22—May 31, 1987.

In an affidavit attached to plaintiff's summary judgment motion, plaintiff's husband, W. Bruce Anderson, stated that he received the subscriber privacy notice attached to plaintiff's complaint as Exhibit A in May 1987. In his deposition, however, Mr. Anderson stated that he was not sure whether he had received the notice in 1987 or in 1988. The subscriber privacy notice received by the Andersons and attached to their complaint as Exhibit A (hereafter referred to as the "pre–1989 SPN") was one sent by TeleCable once a year to all sub-

scribers until January 1989. Thus, if Anderson did receive a disclosure statement at installation (which Anderson in this action denies), the statement would have been identical to Exhibit A. On approximately January 17, 1989, TeleCable mailed, and Anderson received, a revised subscriber privacy notice (hereafter referred to as the "1989 SPN").

In this action, Anderson alleges that she did not receive an SPN in May 1988, as required by the Act. It is, however, undisputed that Anderson did receive and pay her May 1988 bill for cable service. Further, the facts contained in the Statement of Facts relating to plaintiff Scofield regarding TeleCable's processes for annual mailing of SPNs are similarly undisputed here.

As stated in the statement of facts regarding plaintiff Scofield, TeleCable has no written policies with regard to retention of personally identifiable information concerning subscribers. TeleCable's practices regarding retention of subscriber information are largely undisputed by the parties. TeleCable has retained information relating to Anderson as follows: a copy of the work order for one year after installation; plaintiff's name, address, telephone number; plaintiff's account number; plaintiff's initial level of service (premium channel and pay-per-view events) and the level of service at the time of disconnection; information relating to the location of the cable outlet, number and physical location of the cable outlets; date of installation and date of disconnection; billing dates; the aging of plaintiff's account; plaintiff's billing, payment and refund history; a record of subscriber requests to defendant; whether Anderson was an owner or a renter of her residence; the date bills were mailed and any relevant insert codes in connection with bill-mailing; Anderson's converter record; whether Anderson was a new or "restart" customer; whether Anderson requested removal of her name from subscriber lists for privacy reasons; tag numbers identifying individual subscriber drop lines; a record of non-routine subscriber payments and information on work orders necessary to respond to the subscriber situation that generated the work order. All of the above-referenced information is kept in such a form that it is possible to determine that it relates to Anderson and it is presently retained by TeleCable, except for installer work orders and installer checklists which have been destroyed. The same facts contained in the Scofield Statement of Facts relating to TeleCable's subscriber record-keeping systems also apply to Anderson's case as well and are similarly undisputed.

It is also undisputed that Anderson has never given written consent or "electronic consent" as that term is defined in the Act for TeleCable to disclose personally identifiable information concerning her. TeleCable's information disclosure policies are stated in the Statement of Facts relating to plaintiff Scofield. TeleCable has provided information related to plaintiff Anderson in the form of a work order to K & W, Inc., an independent contractor TeleCable has used to install cable service to approximately 25% of its new subscribers. TeleCable provided a mailing label to Jetson Midwest Mailers, Inc., so that Jetson could send an HBO program guide to Anderson. TeleCable has also provided subscriber records relating to Anderson to its attorneys in connection with this suit.

On five or six occasions over the last several years, TeleCable has also allowed Johnson County Community College to use its subscriber list to mail information to cable subscribers about the credit courses offered over the cable system by the college. Further, on several occasions over the last several years, TeleCable has allowed a local consumer research organization retained by NBC to use TeleCable's subscriber list to recruit research volunteers for NBC.

### III. *Summary Judgment Standard*

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material" only when the dispute is over facts that

might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

## IV. *The Cable Act of 1984*

In 1984, Congress enacted the Cable Act to establish national policy and guidelines for the rapidly expanding cable television industry. 47 U.S.C. § 521. Section 551 of the Cable Act, entitled "Protection of subscriber privacy," provides that cable operators are required to make certain disclosures to their customers regarding the personal information the operator retains, the purposes for which it retains that information, the circumstances under which the information will be disclosed to third parties and the time after which the information will be destroyed. Section 551 also provides for a private right of action by a subscriber aggrieved by a cable operator's violation of the Act.

In these actions, Scofield and Anderson allege three separate types of violations of the Cable Act by TeleCable. First, plaintiffs allege that TeleCable failed to provide a privacy disclosure statement both when their respective agreements for cable service were first entered into and in 1988, in violation of Section 551(a)(1) of the Cable Act. Second, plaintiffs allege that the disclosure statements contained in the subscriber privacy notices (SPNs) issued by TeleCable are insufficient to satisfy Cable Act requirements as set forth in section 551(a)(1)(A)–(E). Third, plaintiffs allege that TeleCable violated the Cable Act by failing to destroy personally identifiable information relating to them, as required by section 551(e) of the Act.

## A. Person Aggrieved/Standing

■ The first threshold issue to be resolved is the question of standing. TeleCable contends that plaintiffs do not qualify as "persons aggrieved" under the Act because neither Scofield nor Anderson can demonstrate any actual or pecuniary injury from TeleCable's alleged violations of the Cable Act. Section 551(f)(1) of the Act provides:

Any person aggrieved by any act of a cable operator in violation of this section may bring a civil action in a United States district court.

47 U.S.C. § 551(f)(1). "Person aggrieved" is not defined in the Act itself. As a general rule, the term "person aggrieved" is interpreted as evincing a congressional intention to confer standing "as broadly as permitted by Article III of the Constitution." *See Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972). Further, it is recognized that a violation of statutorily created rights can confer standing under Article III, *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41 n. 22, 96 S.Ct. 1917, 1926 n. 22, 48 L.Ed.2d 450 (1976), even if no injury would exist without the statute. *Jicarilla Apache Tribe v. United States*, 601 F.2d 1116, 1125 (10th Cir.1979), *cert. denied*, 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979). *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Thus, the court finds that TeleCable's proposed interpretation of the term "person aggrieved" as requiring that a plaintiff demonstrate actual or pecuniary injury as a prerequisite to bringing an action is contrary to the generally accepted meaning of the term as it is used in the federal statutes.

■ The court further notes that the Act does not, by its terms, require "actual"

injury as a prerequisite to bringing suit under the Act. The court also notes that, as a practical matter, actual injury from the violation of the subscriber privacy provisions of section 551 would be difficult to show. Although the court's previous decision in *Warner* has been vacated, the court still finds its prior reasoning persuasive, as quoted below:

> In fact, it is difficult to conceive how a subscriber might suffer 'actual' injury as a result of a cable operator's failure to timely provide the subscriber with the proper disclosures as required by section 551(a)(1). Yet, Congress did not limit recovery to those who are the subject of the violations under subsections (b) through (e). All violations of the Cable Act are actionable. The court finds that Congress intended to operate as a 'private attorney general' statute, similar to the Truth–in–Lending Act, 15 U.S.C. 1601 *et seq.*

699 F.Supp. 851, 859 (D.Kan.1988), *remanded with instructions to vacate*, No. 1880–2820 (10th Cir., *unpublished*, Jan. 6, 1989). *See also Herrera v. First Northern Sav. & Loan Ass'n*, 805 F.2d 896, 901 (10th Cir.1986) (stating that injury is presumed from violation of TILA requirements and that no showing of actual injury is required under TILA) (citation omitted). Thus, the court finds TeleCable's arguments with regard to plaintiffs' standing to be without merit.

### B. Statute of Limitations

The next threshold issue before the court on the parties' cross-summary judgment motions in these cases is that of the appropriate statute of limitations. Section 551 of the Cable Act does not provide a limitations period for the subscriber's private right of action for alleged violations of the Act. This is just one of many issues of first impression which the court must resolve in these actions.

In its summary judgment motion, TeleCable contends that the court should borrow a limitations period from an analogous federal statute, namely the one-year limitations period contained in the Federal Truth–in–Lending Act ("TILA"), 15 U.S.C.

§§ 1601 *et seq.* If the court were to seek a limitations period from state law, TeleCable argues that the court should apply the one-year limitations period of the Kansas Uniform Consumer Credit Code, which is analogous to TILA. *See* K.S.A. 16a–5–203(5). In the alternative, TeleCable contends that the court should apply a two-year limitations period, borrowing either from a federal statute, namely the Fair Credit Act, 15 U.S.C. § 1681p, or the Federal Wiretap Act, 18 U.S.C. § 2520, or from the general tort limitations period under state law for actions for invasion of privacy, K.S.A. 60–513(a)(4).

■ Generally, when a federal statute upon which a claim is based does not specify a limitations period, the court will apply the most appropriate state statute of limitations "if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) (footnote omitted). *See DelCostello v. Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983); *Ebrahimi v. E.F. Hutton & Co.*, 852 F.2d 516, 519 (10th Cir.1988). The United States Supreme Court has, however, also endorsed the practice of applying limitations periods derived from analogous federal statutes when, for example, federal policies at stake favor application of a federal rule. *See Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 148, 107 S.Ct. 2759, 2763, 97 L.Ed.2d 121 (1987). In determining whether a federal limitations period should be borrowed, two factors are particularly relevant: (1) the availability of a limitations period in a closely analogous federal statute, and (2) when application of a federal limitations period is consistent with available indications of Congressional intent. *See Wilson*, 471 U.S. at 270, 105 S.Ct. at 1944.

■ The court finds TeleCable's arguments in favor of the application of the one-year statute of limitations from the federal Truth–in–Lending Act (TILA), 15 U.S.C. § 1640(e), persuasive. Applying the two-factor test from *Wilson*, the court finds that TILA is closely analogous to the Cable Act. *See Warner*, 699 F.Supp. at

859; *Wilson v. American Cablevision of Kansas City, Inc.*, No. 88–1259–CV–W–JWO–3, slip op. at 3 (W.D.Mo., *unpublished*, May 29, 1989) (recognizing an appropriate analogy between TILA and the Cable Act in the context of denying a motion for class certification). Both TILA and section 551 of the Cable Act share the same general purpose of requiring meaningful disclosure of information to consumers. Both statutes provide that such disclosure should be clear and conspicuous. *Compare* 47 U.S.C. § 551(a) *with* 15 U.S.C. § 1602(j). As TeleCable points out, the civil enforcement provisions of TILA and section 551 are somewhat similar. *Compare* 47 U.S.C. § 551(f) *with* 15 U.S.C. § 1640(a). *See also Agency Holding Corp.*, 483 U.S. at 151, 107 S.Ct. at 2764 (citing similarity in civil enforcement provisions as persuasive in a decision to borrow a federal limitations period).

Applying the second *Wilson* factor, the court finds that available indications of Congressional intent behind the Cable Act favor the application of a uniform federal limitations period. Congress had several purposes in mind in enacting the Cable Act, including to "establish national policy and guidelines for the rapidly expanding cable television industry," *Warner*, 699 F.Supp. at 854; 47 U.S.C. § 521, and to eliminate any unnecessarily burdensome state regulation of the industry. 47 U.S.C. § 521. Specifically, section 551 was intended to "create a nationwide standard for the privacy protection of cable subscribers...." H.R.Rep. No. 934, 98th Cong., 2d Sess. 76 (1984), *reprinted in*, 1984 U.S.Code Cong. & Admin.News 4655, 4713. Given the federal uniformity concerns expressed in the Cable Act and specifically in enacting section 551, the court finds that applying the federal TILA limitations period, rather than either the state tort or the state version of TILA, would be most consistent with Congressional purposes. The court further finds that because section 551 requires that subscriber privacy notices be issued annually, a one-year limitation period should not prove unduly burdensome because each annual notice would trigger a new, consecutive limitation period during

which a subscriber could bring an action under this section. The court notes, however, that application of the limitations period contained in the most closely analogous state statute, *i.e.*, the state version of TILA, K.S.A. 16a–5–203(5) (providing for a one-year limitations period), would lead to a result identical to that reached by applying federal law.

In their filings on this issue, plaintiffs make several arguments. First, plaintiffs contend that TeleCable has waived a statute of limitations defense by failing to cite a specific limitations period in its answer. Because the court finds that TeleCable has complied with Rule 8 of the Federal Rules of Civil Procedure by generally pleading its reliance on a statute of limitations affirmative defense, Defendant TeleCable's Answer at ¶ 17, the court finds plaintiffs' first argument is without merit. *See, e.g., Santos v. District Council of New York City*, 619 F.2d 963, 967 (2d Cir.1980).

Second, plaintiff Scofield initially argued that no limitations period should apply to actions under the Cable Act since no period is specified within the Act. Scofield has since retreated from this position in subsequent filings in connection with the parties' cross-motions in his case. The court, however, will note here that some limitations period must apply to this federal cause of action. *See Wilson*, 471 U.S. at 271, 105 S.Ct. at 1944 ("[a] federal cause of action 'brought at any distance of time' would be 'utterly repugnant to the genius of our laws.'") (quoting *Adams v. Woods*, 2 Cranch 336, 342, 2 L.Ed. 297 (1805)). Thus, the sole question properly before the court is that of which limitations period is most appropriately borrowed for these private attorney general actions under section 551 of the Cable Act. *See, e.g., Agency Holding Corp.*, 483 U.S. at 146, 107 S.Ct. at 2762 (applying the borrowing principle to import a limitations period for a federal cause of action).

Third, plaintiffs urge the court to apply general limitation periods available under Kansas law for actions created by statute, *e.g.*, K.S.A. 60–512(2) (providing a three-year period for "an action upon a liability

created by a statute other than a penalty or forfeiture") or K.S.A. 60–511(5) (providing a five-year period for "an action for relief, other than recovery of real property not provided in this article."). The court, however, finds that applying either of these "catch-all" limitation periods would be inappropriate. As the Tenth Circuit Court of Appeals has recently stated the matter in *Ebrahimi v. E.F. Hutton & Co.:*

> When borrowing a state statute of limitations, a court should look to the statute which most clearly addresses the same or similar policy considerations as those underlying the federal right.... 'There simply must be a commonality of purpose between the federal right and the state statutory scheme so that it is reasonable to subject the federal implied right to the statute of limitations provided by state law.'

852 F.2d at 520. The court finds that neither of the statutory provisions proffered by plaintiffs are analogous enough to their section 551 actions to merit application here.

Fourth, plaintiffs argue that the limitations period contained in the state or federal versions of TILA should not apply because section 551 concerns record-keeping as well as disclosure. The court, however, finds that there is a substantial federal interest in applying a uniform limitations period to all private actions brought under section 551(f), whether a subscriber's claims arise out of a cable operator's alleged violation of the disclosure provisions of section 551(a)(1) or out of the information destruction provisions of section 551(e). This court has no desire to instigate the creation of the kind of "confused, inconsistent, and unpredictable" state of the law in this area that has occurred in the contexts of civil RICO and section 1983, when courts applied different limitation periods according to their characterization of the plaintiffs' underlying claims. *See Agency Holding Corp.,* 483 U.S. at 148, 107 S.Ct. at 2763 (citation omitted). Thus,

the court will apply the TILA limitations period to all of plaintiffs' section 551 claims in these actions.[2]

■ Finally, plaintiffs contend that the court should apply the doctrines of equitable estoppel or equitable tolling to relieve any statute of limitation problems in this case. The court, however, finds that plaintiffs have not demonstrated any basis for either equitable tolling or equitable estoppel in this case. Therefore, because both plaintiffs filed their respective actions on January 20, 1989, the court finds that the only issues before it concern the adequacy of TeleCable's pre–1989 and 1989 SPNs, plaintiffs' claims for non-delivery of an SPN in 1988, and plaintiffs' claims that TeleCable violated section 551(e) by not destroying information about them. Plaintiffs' claims that they did not receive disclosure statements at installation (in 1985 for plaintiff Scofield and in 1987 for plaintiff Anderson) are time-barred. The court finds that, on the undisputed facts, the remaining issues in this case are ripe for summary judgment.

C. Adequacy of TeleCable's Subscriber Privacy Notice

Subsection (a)(1) of section 551 of the Cable Act sets out a number of specific requirements for subscriber privacy notices (SPNs). That subsection provides as follows:

**(a) Notice to subscriber regarding personally**

(1) At the time of entering into an agreement to provide any cable service or other cable service to a subscriber and at least once a year thereafter, a cable operator shall provide notice in the form of a separate, written statement to such subscriber which clearly and conspicuously informs the subscriber of—

**(A)** the nature of personally identifiable information collected or to be collected with respect to the subscriber and the nature of the use of such information;

---

**2.** The court will further note that plaintiffs' objections on this ground to application of a uniform one-year limitations period lack substance because claims for violation of the disclosure provisions of section 551(a)(1) and the destruction of information provision of section 551(e) may in fact differently accrue.

**(B)** the nature, frequency, and purpose of any disclosure which may be made of such information, including an identification of the types of persons to whom the disclosure may be made;

**(C)** the period during which such information will be maintained by the cable operator;

**(D)** the times and place at which the subscriber may have access to such information in accordance with subsection (d) of this section; and

**(E)** the limitations provided by this section with respect to the collection and disclosure of information by a cable operator and the right of the subscriber under subsections (f) and (h) of this section to enforce such limitations.

Plaintiffs contend that defendant's SPNs fail to meet the section 551(a)(1) requirement that the notice "clearly and conspicuously" inform the subscriber of the specific items enumerated in subsections (A)–(E). In defining the "clear and conspicuous" standard, plaintiffs contend that Congress intended to impose in the Cable Act a strict standard similar to that found in the Truth–in–Lending Act, 15 U.S.C. § 1632(a). Thus, plaintiffs argue that the required disclosure must appear in "a reasonably understandable form," citing TILA regulations and *Sneed v. Beneficial Fin. Corp.*, 410 F.Supp. 1135, 1138 (D.Haw.1976) (disclosure must be "readily understandable by the ordinary layman"). Specifically, plaintiffs contend that the eight-point type of TeleCable's SPNs is too small, that the introductory language is "confusing as to what 'federal law' is involved," and that the disclosure made in the SPNs is not full, complete or readily understandable in form.

■ With regard to plaintiffs' arguments that the SPNs violate the "clear and conspicuous" requirement under Section 551(a)(1) of the Act, the court finds that a general standard of "meaningful disclosure," which governs TILA disclosure, should apply in evaluating defendant's disclosure under the Cable Act. *See Brooks v. Maryville Loan & Fin. Co.*, 679 F.2d 837, 839 (11th Cir.1982) (citing *Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 101 S.Ct. 2239, 68 L.Ed.2d 744 (1981)). Under this standard, defendant's disclosure should be reasonably understandable to the ordinary person. *Sneed,* 410 F.Supp. at 1138 (applying this standard in TILA cases). With regard to plaintiffs' specific arguments, the court does not find that the use of eight-point type for printing the notice in and of itself violates the Cable Act requirement that the written notice clearly and conspicuously inform the subscriber of certain required information. The court notes that under federal regulations, forms set in eight-point type apparently meet the analogous TILA requirements that notices be clear and conspicuous. *See* 12 C.F.R. § 226, App. G (1989) (Form G–5—Rescission Model Form (When Opening An Account)). The court will, however, apply the clear and conspicuous standard in its consideration of whether the disclosure contained in TeleCable's subscriber privacy notices comports with the particular requirements of section 551(a)(1).

In defense of its subscriber privacy notices, TeleCable advances several arguments. Primarily, TeleCable contends that it should have no liability under the Act because it has acted in good faith in writing and disseminating its SPNs. TeleCable also contends that a lessened degree of scrutiny can and should be applied to its SPNs for two reasons. TeleCable argues that the legislative history indicates that Congress was primarily concerned with avoiding privacy abuses connected with two-way, rather than one-way, cable systems. Second, TeleCable argues that various statements in the legislative history regarding a "fair information practices" standard support applying a lesser degree of scrutiny in evaluating TeleCable's SPNs. TeleCable also presents expert testimony from Dr. Alan Westin in support of its position that neither its SPNs nor its subscriber information practices violate the Cable Act.

■ The court, however, finds that TeleCable's arguments in favor of a lesser degree of scrutiny of their subscriber privacy notices must fail for several reasons.

First, the court finds that the Act's subscriber privacy provisions apply unambiguously to one-way as well as two-way cable systems. *See* 47 U.S.C. § 522(5)(A) (defining "cable service" as including one-way transmission of video programming or other programming service). Thus, if Congress had meant to exclude or apply a lessened standard to one-way cable systems it did not so specify in the statutory language. Second, the Act explicitly imposes the fairly rigorous standard that the notice "clearly and conspicuously" inform the subscriber of the specific items set forth in section 551(a)(1)(A)–(E); the court must, therefore, follow the express mandate of the Congress in evaluating TeleCable's compliance with the Act.

Third, because the court finds that the language of the Act is clear and unambiguous, the language must be held to mean what it plainly expresses; the court should not resort to selective portions of the legislative history to interpret section 551(a)(1) requirements. *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) ("It is elementary that the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms.") (citation omitted). *See also* 2A C. Sands, *Sutherland Stat. Constr.* § 46.01, at 73–74 (1984). Further, because the court finds that expert testimony is not necessary to interpret the clear language of the Act, the proffered report of Dr. Westin will not be given undue weight in the court's decision. Last, because Congress did not see fit to place a "good faith" defense or exception in the Act, the court cannot deviate from the expressed intent of Congress to apply the exception urged by TeleCable here.

*Subsection (A)*

As quoted above, section 551(a)(1)(A) contains two separate requirements. First,

subsection (A) requires the cable operator to clearly and conspicuously disclose in a notice "the nature of personally identifiable information collected or to be collected with respect to the subscriber." Second, the cable operator must disclose, clearly and conspicuously, "the nature of the use of such information." Defendant's pre–1989 SPN contains the following disclosure:

1. In order that we may continue to provide reliable, high quality service to you, we keep regular business records that contain your name, address and other personally identifiable information. Such records include billing, payment and deposit records, records indicating the number of your television sets connected to cable, and the service options you have chosen. We use this information to make sure that you are being billed properly for the services you receive.

■ Given the undisputed facts regarding TeleCable's practices, the court finds that the TeleCable pre–1989 SPN's disclosure with regard to the nature of information collected or to be collected is adequate to comply with the Act. As an initial matter, the court finds that the requirement that the SPN disclose the "nature" of the information collected does not by its terms require that each item of information be separately disclosed.[3] The court notes that TeleCable's use of the phrase, "other personally identifiable information," coupled with the use of the phrase, "such records include," followed as it is by a non-exhaustive list, could be considered problematic. The court, however, finds that because the evidence before it on the parties' cross-motions does not show that TeleCable in fact collected or sought to collect information of a different nature than the types of information disclosed in the SPN, TeleCable's disclosure of the "nature of the information collected" substantially complies with subsection (A) requirements. It therefore follows that TeleCable's 1989 SPN, which (as quoted in the Statement of Facts relative to plaintiff Scofield) is more complete

---

**3.** Although of course not definitive regarding Congress' intended use of the term, the court notes that Webster's New Collegiate Dictionary defines "nature" as "a *kind* or *class* usually distinguished by fundamental or essential characteristics." *Id.* at 759 (emphasis added).

than the pre–1989 SPN, also complies with the Act.

■ The court, however, finds that the disclosure in the pre–1989 SPN with regard to the nature of TeleCable's use of subscriber information is too incomplete to pass statutory muster. The pre–1989 SPN merely states that the information is used "to make sure you are being billed properly for the service you receive." In fact, Tele-Cable uses the information for more than just billing purposes. These uses are more accurately disclosed in the 1989 SPN which states that the information is used to "sell, maintain, disconnect, and reconnect services; to make sure that you are being billed properly for the services you receive; and to maintain financial, accounting, tax, service and property records." Even this disclosure is incomplete, in light of TeleCable's use of subscriber information for various mailings, including program guides, and for Johnson County Community College class-related mailings, as well as TeleCable's disclosure of subscriber information to a consumer research organization. The court finds that these additional uses not specified in the SPN are of a different nature than the uses disclosed in TeleCable's notices. Thus, the court finds that TeleCable's disclosure in both the pre–1989 and 1989 SPNs violates the second requirement of section 551(a)(1)(A) that the nature of the use of personally identifiable information be clearly and conspicuously disclosed in the subscriber privacy notice.

*Subsection B*

■ Section 551(a)(1)(B) requires that the written notice clearly and conspicuously disclose the "nature, frequency, and purpose of any disclosure ... including an identification of the types of persons to whom the disclosure may be made." In relevant part, defendant's pre–1989 SPN states:

2. We consider information we keep to be confidential. We may collect personally identifiable information from you and may disclose it to a third party if (a) you consent in advance in writing or electronically; (b) disclosure is necessary to render cable services and other services we provide to you and related business activities; or (c) disclosure is required pursuant to a court order and you are notified of such order. (For example, we may without your consent disclose your name and address to a collection service if required to collect past due bills).

3. Unless you object, from time to time, we may also disclose your name and address for mailing lists and other purposes permitted by law. We will not disclose the extent of your viewing or use of a particular service or the nature of any transaction you may make over the cable system, but we may disclose that you are among those who subscribe to a particular service. If you wish to remove your name from such lists or limit the use of your name at any time, please contact us at the system office.

The uncontroverted facts with regard to TeleCable's practices concerning release of subscriber information to third parties are as follows. TeleCable generally states that it does not release subscriber names and addresses to any third party except in connection with rendering cable service. Tele-Cable further states that it does not use subscriber names and addresses for any purpose except to render cable service. TeleCable states that information in addition to subscriber names and addresses is disclosed only to conduct "legitimate business activities related to cable service." Specifically, however, TeleCable provides subscriber information to the following persons: an independent billing house ("Cable Data") to send bills, independent contractors installing cable service ("K & W, Inc."), premium channels for purposes of sending program guides, Johnson County Community College for mailings about credit courses available via cable, and consumer research organizations retained by NBC to recruit program research volunteers (through ASI Market Research, Inc.).

The court finds the disclosure contained in defendant's pre–1989 SPN insufficient to comply with section 551(a)(1)(B) requirements. First, aside from the example of

defendant's possible use of a collection service to collect unpaid bills from a subscriber, TeleCable's pre–1989 SPN is too vague and too general regarding the nature and purpose of its disclosure of subscriber information to third parties to constitute meaningful disclosure. It does not clearly and conspicuously inform the subscriber of TeleCable's practices concerning disclosure of information to third parties. Second, other than the example of a collection agency, the pre–1989 notice does not disclose the types of persons to whom disclosure is made, other than as "third parties." Third, the disclosure is incomplete (in terms of nature and purpose of disclosure and types of persons to whom disclosure is made) in light of defendant's actual practices, as outlined above.

Fourth, the pre–1989 SPN does not let the subscriber know how frequently subscriber information is disclosed. Although the court again notes that a dictionary definition is not controlling with regard to Congress' intended meaning of any term, the court is struck by the precise nature of the word chosen by Congress for this subsection, *i.e.*, "frequency", which is defined in Webster's New Collegiate Dictionary as "the number of repetitions of a periodic process in a unit of time." *Id.* at 455. The court finds the statement "from time to time," is simply too general to comply with the rather specific requirements of the Act. Thus, the court finds that TeleCable's pre–1989 SPN violates section 551(a)(1)(B) of the Cable Act.

The court finds that TeleCable's 1989 SPN also violates subsection (B) requirements. As an initial matter, the court notes that the revised notice is much more complete than the pre–1989 SPN. The court, however, finds that some of the defects of the earlier SPN remain. Specifically, the 1989 SPN does not reveal that TeleCable makes personally identifiable subscriber information available to Johnson County Community College or to consumer research organizations. The court finds that these disclosures are of different natures, to different types of persons, and for different purposes than those contained in the 1989 SPN. Further, the blanket statement in the third paragraph of the notice that TeleCable "may also disclose your name and address for mailing lists and other purposes permitted by law" provides no meaningful disclose regarding the limits of TeleCable's disclosure of subscriber names and addresses to third parties. If, as TeleCable argues, it is merely attempting to inform the subscriber that the Act allows a cable operator to disclose certain information about its subscribers, but that TeleCable does not in fact give out its mailing lists to third parties, the notice should so state, clearly and conspicuously, as required by the Act.

With regard to the frequency of these disclosures, the 1989 SPN is more complete than the pre–1989 SPN in that it states that TeleCable *may* make subscriber records "available *routinely,*" to a fairly wide list of persons stated in the second paragraph of the notice. The 1989 SPN also contains the general statement that "[t]he frequency of disclosure varies according to business needs." The 1989 SPN retains the same vague language as the pre–1989 SPN in its third paragraph that TeleCable "from time to time" may disclose subscriber names and addresses for mailing lists and "other purposes permitted by law." As stated above, the broad statements to the effect that TeleCable will disclose information whenever it wishes to do so are simply too general to comply with Congress' specific mandate in subsection (B). Therefore, the court finds that both the pre–1989 and 1989 SPNs violate the Act for the reasons stated above.

*Subsection C*

■■■ Section 551(a)(1)(C) requires that the written notice clearly and conspicuously inform the subscriber of the "period during which [subscriber information] will be maintained by the cable operator." Defendant's SPN (the pre–1989 version) states:

5. We will maintain information about you for as long as we provide service to you, and for a longer time if necessary for related business activities. When information is no longer necessary

for our purposes, we will destroy the information unless there is a legitimate request or order to inspect the information still outstanding.

The undisputed facts regarding TeleCable's practices are as follows. TeleCable has retained certain information relating to plaintiffs Scofield and Anderson including: a copy of the initial work orders (retained for one year after installation of service); plaintiffs' names, addresses, and telephone numbers; account numbers, initial levels of service (premium channel and pay-per-view events) and the level of service at the time of disconnection; information relating to the location of the cable outlet, number and physical location of the cable outlets, date of installation, date of disconnection, billing dates, the aging of plaintiffs' accounts, plaintiffs' billing, payment and refund history; a record of plaintiffs' requests to TeleCable; whether plaintiffs were owners or renters of their respective residences; the date bills (and inserts) were mailed; converter record; whether plaintiffs were new or "restart" customers; whether either of plaintiffs requested removal of his or her name from subscriber lists for privacy reasons; and tag numbers identifying individual subscriber drop lines. All of the above information, which (with the exception of installer work orders and installer checklists) is currently being retained by defendant, is kept in such a form that it is possible to determine that it relates to a particular subscriber, such as plaintiffs.

As stated in its SPNs, TeleCable's general policy is to keep subscriber information so long as it provides service to the subscriber and for a longer time if necessary for related business activities. TeleCable's principal repository of subscriber information is an electronic data base or Management Information System ("MIS"). Under the MIS, non-current information is periodically purged from the system to make additional disk space, e.g., billing data is retained in the subscriber file for 60–90 days.

TeleCable also has supplementary record systems. TeleCable states that "hard copy" is necessary for some data, such as the data on a work order which must be carried by the technician to the work location. The time period during which such documents are maintained varies depending on TeleCable's asserted "business need," for up to one year for installation work orders. Some "hard copy" items, such as disconnect work orders, are discarded immediately. The only "hard copy" item kept for longer than one year is the converter receipt, which is kept until the subscriber returns the equipment. TeleCable's second supplementary recordkeeping system is its historical ledger microfiche which preserves accounting data and supporting billing data in microfiche form. Each historical ledger microfiche contains billing records for over two thousand subscribers. TeleCable presently has microfiche records for each month since the Cable Act was passed.

The court finds that the defendant's disclosure in both the pre–1989 and the 1989 SPNs is inadequate to meet the requirements of this subsection. The court finds that the phrase, "and for a longer time if necessary for related business activities," gives the cable operator a veritable "blank check" for retaining information and gives the subscriber no meaningful disclosure regarding what subscriber information is being retained, for how long, and for what reason. The cable operator could easily disclose, for example, that as a general rule, work orders and installer checklists are retained for one year, subscriber payment stubs for six months and converter records for as long as a subscriber has a converter. TeleCable could also disclose that specific subscriber information is retained in the historical ledger microfiche for five or six years, as the case may be, for accounting and tax purposes. Aside from the lack of specificity of TeleCable's disclosure, the other problem appears to be that, contrary to the statement contained in the SPNs, information is not destroyed but has been, in fact, to date maintained (possibly indefinitely) in the historical microfiche ledger. Although the Act does not dictate any particular policy regarding a cable operator's information retention practices, besides the general admonition that information is to be destroyed when it is no longer

necessary for the purposes for which it was collected, 47 U.S.C. § 551(e), section 551(a)(1) certainly does dictate that the disclosure about these practices be accurate and non-misleading. TeleCable's proposed reading of this section would, in the court's view, render it completely meaningless. Thus, the court finds that the disclosure in the pre–1989 and the 1989 SPNs violates section 551(a)(1)(C) of the Act.

*Subsection (D)*

■ Section 551(a)(1)(D) requires defendant to clearly and conspicuously disclose "the times and place at which the subscriber may have access to such [personally identifiable] information in accordance with subsection (d)...." Defendant's pre–1989 SPN contains the following statement: "If you wish to inspect the records at our system office pertaining to you, please contact us to set up an appointment during regular business hours." The address and phone number of the TeleCable office are not shown on the pre–1989 notice itself, but are shown on the bill accompanying the notice. Plaintiffs contend that this disclosure is insufficiently specific to satisfy the Act because the SPN does not disclose the office, address or regular business hours of TeleCable, and does not explain the phrase, "our system office pertaining to you." Defendant contends that the cost of printing a separate SPN for each of TeleCable's several offices is prohibitive.

The court finds that defendant's disclosure in both the pre–1989 and 1989 notices of the "times" at which a subscriber may have access to TeleCable's records regarding him, *i.e.,* asking the subscriber to set up an appointment during "regular business hours," substantially complies with section 551(a)(1)(D). Although the Act specifically states that the disclosure should include the "times" of access, the court finds that a reasonable layperson could so comprehend the term "regular business hours" as to enable him or her to make contact with TeleCable during the hours in which TeleCable's offices are actually open, *i.e.,* 8:30 a.m. to 8:00 p.m., Monday through Thursday, Friday from 8:30 a.m. to 5:00 p.m., and Saturday from 8:30 a.m. to 1:00 p.m.

The court, however, finds that TeleCable's pre–1989 SPN does not comply with the subsection (D) requirement that cable operators disclose the "place" of access since no "place" is mentioned on the face of the notice. Although a subscriber might well be able to infer a location from Tele-Cable's billing envelope, to find this sufficient would, in the court's view, negate the clear language used by Congress. Thus, the court finds that defendant's failure to specify in the pre–1989 SPN a "place" where the subscriber may obtain access constitutes a violation of the Act. Conversely, the court finds that the 1989 SPN, which does state TeleCable's address on its face, complies with the subsection (C) requirement. The court finds the remainder of plaintiffs' arguments with regard to this subsection to be without merit.

*Subsection E*

■ The last specific disclosure requirement in section 551 states that a cable operator must clearly and conspicuously disclose "the limitations provided by this section with respect to collection and disclosure of information by a cable operator and the right of the subscriber under subsections (f) and (h) to enforce such limitations." The pre–1989 SPN contains the preamble, "[A]s a subscriber of cable services, you are entitled under federal law to know the following[:]...." The last paragraph of the pre–1989 SPN states as follows:

6. You have the right to inspect our records that contain information about you, correct any error in our information, and enforce your rights under federal law. If you wish to inspect the records at our system office pertaining to you, please contact us to set up an appointment during regular business hours.

The revised 1989 SPN states:

Federal law limits the collection and disclosure of these records. If your rights under federal law are violated, you may bring a private action in federal district court to remedy that violation.

The court finds that the disclosure in the pre–1989 SPN is deficient because it does not tell the subscriber that the Cable Act restricts a cable operator's ability to collect and disclose personally identifiable information. The court further finds that both notices are deficient because, in the court's view, to achieve Congress' intent as expressed in this section, the cable operator should summarize the restrictions placed on it by the Act; neither the pre–1989 nor the 1989 notices do this. Moreover, the pre–1989 notice does not inform subscribers that they may bring a private action if the cable operator violates the requirements of the Act. In the court's view, an adequate notice would also tell subscribers what remedies are available under the Act; neither version of the notice does this. While the 1989 SPN is preferable to the pre–1989 SPN, the court finds that both fail to give the subscriber enough specific information about the limitations placed by the Act on cable operators to enable a subscriber to know when a violation has occurred and thus, when the private right of action available under the Act may need to be invoked. Thus, the court finds that both notices are in violation of section 551(a)(1)(E).

**D. Destruction of Subscriber Information**

In this action, plaintiffs also allege a violation of section 551(e) of the Cable Act. This subsection provides:

> A cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under subsection (d) of this section or pursuant to a court order.

47 U.S.C. § 551(e). The relevant undisputed facts with regard to this claim can be briefly summarized as follows. Scofield began receiving cable service from TeleCable in February 1985 and has since then continued as a TeleCable subscriber (albeit with a change in address). To date, Tele-Cable has retained certain information

about Scofield, as recounted in the Statement of Facts relative to plaintiff Scofield. In this action, Scofield contends that Tele-Cable has violated the Act by failing to destroy personally identifiable information relating to him when Scofield terminated cable service at his first address on December 28, 1988. Similarly, plaintiff Anderson claims that TeleCable violated section 551(e) of the Act by retaining personally identifiable information relating to her after she requested disconnection of her service on June 1, 1989.

TeleCable basically contends that it must maintain certain subscriber information for tax and financial accounting purposes for a period of at least 5–6 years. In their respective filings in connection with the parties' cross summary judgment motions in these cases, both plaintiffs Scofield and Anderson concede that they "ha[ve] no substantial argument with defendant holding such information for the six year tax record period." Plaintiff's Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Scofield; Doc. 49), at 5, and (Anderson; Doc. 48), at 4. Plaintiffs basically object, however, to TeleCable's lack of a written policy regarding destruction of information and what they view as a potential for abuse by TeleCable in retaining subscriber information.

Upon review of the parties' arguments and the undisputed facts, the court finds that plaintiffs' claim regarding TeleCable's retention of subscriber information allegedly in violation of 47 U.S.C. § 551(e) is simply not ripe for decision at this time. Plaintiff Scofield began as a subscriber in February 1985; plaintiff Anderson began subscribing in April 1987. Both plaintiffs terminated cable service in December 1988 and in June 1989, respectively. In light of plaintiffs' statement conceding the reasonableness of retention of information for a six-year tax record period, the court finds that plaintiffs at this point are essentially asking the court to issue an advisory opinion in this area; this the court cannot do. *See* U.S. Const. art. III.[4] Thus, the court

---

**4.** The court will, however, note that it is possi- ble that any potential cause of action plaintiffs

finds that plaintiffs' claims for violation of section 551(e) should be dismissed. *See Kerr v. Kimmel*, 740 F.Supp. 1525, 1531 (D.Kan.1990) (citing *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588–89, 92 S.Ct. 1716, 1719–1720, 32 L.Ed.2d 317 (1972)).

### E. Alleged Non–Delivery of an SPN in 1988

Plaintiff Anderson claims that she never received a subscriber privacy notice in 1988, in violation to the Act's requirement in section 551(a)(1) that cable operators issue disclosure statements to subscribers annually. The facts relative to this claim can be briefly summarized as follows. TeleCable states that it mails an SPN to each subscriber each year along with its May bills for cable service. This statement is essentially uncontroverted by Anderson. Anderson admits that she received her May bill for cable service in 1987 and in 1988. Although Anderson admits receiving an SPN along with her cable bill in 1987, she maintains that she did not receive an SPN in 1988.

In its motion, TeleCable contends that it is entitled to summary judgment based on its reliance on routine office procedures for mailing SPNs with its May bills for cable service. Plaintiff concedes that there is a legal presumption that materials mailed are actually received by the party to whom they are sent, when there is proof that routine office procedures were followed in preparation and mailing. *See, e.g., Meckel v. Continental Resources Co.*, 758 F.2d 811, 818 (2d Cir.1985) (notice of redemption to debenture holders); *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir.) (en banc) (notice of rescission letter by party to contract), *cert. denied*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). TeleCable contends that this presumption is particularly strong in this case because of TeleCable's undisputed use of computerized processes for mailing bills and subscriber privacy notices to subscribers, citing *In re American Properties, Inc.*

*v. Coleman Am. Properties, Inc.*, 30 B.R. 239, 242 (Bankr.D.Kan.1983) (notice of bankruptcy proceedings and proof of claim forms) and *Gulf Coast Investment Corp. v. Secretary of H.U.D.*, 509 F.Supp. 1321, 1326 (E.D.La.1980) (notice to insured of policy termination).

■ Although this presumption of receipt is rebuttable, *see, e.g., Meckel*, 758 F.2d at 817, the court finds that Anderson has not presented evidence sufficient to rebut the strong presumption of receipt in this case. Although the affidavits of plaintiff Debbie Anderson and her husband W. Bruce Anderson attached to plaintiff's summary judgment motion state that no SPN was received upon installation of service (a time-barred claim), these affidavits do not contain any verified statement to the effect that no notice was received in May 1988. In addition to the uncontroverted evidence presented by TeleCable with regard to its computerized mailing procedures and its quality control mechanisms, TeleCable also produces proof that Anderson did pay her May 1988 cable bill which, according to TeleCable's procedures, should have been accompanied by the notice. Thus, the court finds that defendant is entitled to summary judgment on plaintiff Anderson's claim.

Further, although plaintiff Scofield asserted a claim for non-delivery of an SPN in May 1988 in his first amended complaint, Amended Complaint (Scofield; Doc. 30A), at ¶¶ 12, 13, Scofield presents no argument or evidence in support of this claim in his filings relative to the parties' cross-motions. Scofield admits receiving a bill for cable service in May 1988. Scofield presents no evidence to rebut the presumption of receipt of an SPN along with the May bill. Therefore, the court finds that defendant is also entitled to summary judgment on plaintiff Scofield's claim for non-delivery of an SPN in 1988.

### F. Constitutionality of Section 551

TeleCable contends that section 551 is unconstitutionally vague, arbitrary, and in-

---

may assert for non-destruction of information under section 551(e) may not yet have accrued

for limitations purposes as well.

definite, and thus, violates the fifth and fourteenth amendments. As stated by another district court, "[D]ue process requires that the meaning of a statute be sufficiently certain to provide individuals with adequate notice of the law's requirements. A potential defendant should not be forced to guess at the meaning of the statute." *United States v. Rogers,* 602 F.Supp. 1332, 1341 (D.Colo.1985) (upholding RICO forfeiture provisions, 18 U.S.C. § 1963(a)(3), from due process challenge). TeleCable generally contends that section 551 should be declared unconstitutional because it does not sufficiently describe what must be set forth in the subscriber privacy notices and because it contains undefined terms.

■ TeleCable specifically objects to the term "personally identifiable information." The court, however, finds that the phrase does have a readily ascertainable meaning. Section 551(a)(2) does define the term by exclusion:

For purposes of this section, the term 'personally identifiable information' does not include any record of aggregate data which does not identify particular persons.

Further, the legislative history states that " 'personally identifiable information' ... would include specific information about the subscriber, or a list of names and addresses on which the subscriber is included...." H.R.Rep. No. 98–934, 98th Cong., 2d Sess. 79, *reprinted in,* 1984 U.S.Code Cong. & Admin.News 4655, 4716. Thus, by the clear meaning of the words used, a subscriber's name is personally identifiable, with other information such as an address or telephone number becoming personally identifiable if stored or disclosed in such a manner that it is possible to determine that it relates to a particular subscriber. The court further finds that TeleCable has not demonstrated that the section 551 requirements are beyond the understanding of "men of common intelligence." *Hynes v. Oradell,* 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976) (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)).

Thus, the court finds that TeleCable's constitutional challenge to the Act's requirements is without merit.

G. Damages

■ The remaining question before the court involves what damages plaintiffs may recover under the Act. Section 551(f)(2) provides:

(2) The court may award—

(A) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(B) punitive damages; and

(C) reasonable attorneys' fees and other litigation costs reasonably incurred.

Although plaintiffs are not requesting punitive damages, plaintiffs do seek liquidated damages. Plaintiff Scofield requests an award of liquidated damages in the amount of $178,100.00, plus $100.00 per day from January 20, 1989, until the date of judgment. Plaintiff Anderson requests a liquidated damage award in the amount of $101,300.00, plus $100.00 per day from January 20, 1989, until the date of judgment.

In its motion for summary judgment, TeleCable contends that plaintiffs must prove actual pecuniary damages to recover liquidated damages for violations of the Act. The court, however, finds that such an interpretation is negated by the express language of Section 551(f)(2) which clearly states that the court must award liquidated damages at a minimum, even in the absence of actual damages. For its argument that liquidated damages are not recoverable absent a showing of actual damages, TeleCable relies on an analogy to the Federal Wiretap Act, 18 U.S.C. § 2520 (hereafter, "the Wiretap Act"), and on *Jacobson v. Rose,* 592 F.2d 515 (9th Cir.1978), *cert. denied,* 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979), which deals with a case brought under the Wiretap Act. The court has examined the *Jacobson* case and does not find that it stands unequivocally for the proposition urged, *i.e.,* that liquidated damages are never recoverable in the absence of proof of actual damages. The court

further finds that the present case is distinguishable from *Jacobson* because of the differing language and legislative histories of the Wiretap Act and the Cable Act, respectively. As this court previously stated in *Warner* (now vacated):

The court rejects this contention [that section 551(f) remedies are not available unless plaintiff shows that he has suffered actual injury]. It is guided in part by the fact that the House Report upon which [defendant] American relies refers to an earlier version of the bill. The original House version provided that, '[a]ny cable subscriber *whose privacy is violated* in contravention of this section' is entitled to recover. S. 2172, 97th Cong., 1st Sess. § 610(i), *reprinted in* S.Rep. No. 518, 97th Cong., 1st Sess. at 41 (1981); S. 66, 98th Cong., 1st Sess. § 611(f), *reprinted in* S.Rep. No. 67, 98th Cong., 1st Sess. at 42 (1983) (emphasis added). The federal wiretap statute also provides that 'any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the wiretap statute] may in a civil action recover.' 18 U.S.C. § 2520(a). *In other words, recovery under the wiretap statute is limited to those whose privacy is actually invaded.* The text of the original Cable Act bill was changed and the more expansive language of section 551(f) was substituted, providing that any person '*aggrieved by any act* of a cable operator in violation of this section' could recover (emphasis added). [Given defendant's violation of section 551(a), the court finds that plaintiff was aggrieved by defendant's violation of the Act.] No finding of actual damages or an actual invasion of privacy is required.

699 F.Supp. at 858–59 (emphasis added). Thus, since plaintiffs Scofield and Anderson can be said to be "aggrieved" by TeleCable's inadequate disclosure notice, the court finds that liquidated damages are properly awardable even without a showing of actual damages.

Moreover, as the court noted in *Warner*, actual injury would be difficult if not impossible to show for violations of the disclosure requirements of section 551(a)(1). *Id.* at 859. "Yet, Congress did not limit recovery to those who are the subject of the violations under subsections (b) through (e). All violations of the Cable Act are actionable." *Id.* The court further finds that an award of liquidated damages is consistent with the private attorney general means of obtaining enforcement of the privacy provisions of the Act. *Id.* The court finds TeleCable's arguments to the contrary to be unpersuasive.

■ With regard to the amount of liquidated damages which may appropriately be awarded, however, the court will adhere to its previously expressed position in *Warner* that the inadequate disclosure violations are one-time, rather than continuous (daily) violations, *i.e.*, each year when an inadequate SPN was delivered to plaintiffs the Act was violated, subject to the one-year statute of limitations period to be applied to these claims. Therefore, the court will assess one thousand dollars ($1,000.00) in liquidated damages for each violation, as provided in section 551(f)(2)(A). The court will not address the issue of attorneys' fees at this time, but will consider the matter as raised upon motion in accordance with Local Rule 220.

■ Defendant TeleCable challenges the constitutionality of the Act's provision for damages on several grounds. First, TeleCable proposes that awarding liquidated damages in the amount sought by plaintiffs would constitute an excessive fine prohibited by the eighth amendment. Second, TeleCable contends that allowing an award of liquidated damages in the amount sought by plaintiffs would unconstitutionally chill defendant's first amendment rights and restrain its business practices. Third, TeleCable contends that allowing liquidated damages would violate defendant's constitutional rights of due process.

The court finds, however, that the "excessive fine" clause is inapplicable in this case because only private parties, and not the government, is involved. *See Browning–Ferris Indus., Inc. v. Kelco Disposal,*

**1522**

*Inc.*, 492 U.S. 257, ——, 109 S.Ct. 2909, 106 L.Ed.2d 219, 231 (1989). Because no state action is presented by this private attorney general action, the court finds that TeleCable's first amendment argument is also without merit. *See Central Hardware Co. v. NLRB*, 407 U.S. 539, 547, 92 S.Ct. 2238, 2243, 33 L.Ed.2d 122 (1971). Further, given the court's interpretation of the Act's liquidated damage provision, the court does not find that the proposed damages are "so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable," *St. Louis Iron Mountain & Southern Ry Co. v. Williams*, 251 U.S. 63, 66, 40 S.Ct. 71, 73, 64 L.Ed. 139 (1919), as to offend the due process clause. Thus, the court finds defendant's constitutional arguments with relation to damages to be without merit.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motions for summary judgment in case no. 89–4014–S and case no. 89–4015–S are granted in part and denied in part, consistent with the above opinion.

IT IS FURTHER ORDERED that plaintiffs' motions for summary judgment in case no. 89–4014–S and case no. 89–4015–S are granted in part and denied in part, consistent with the above opinion. Plaintiffs Scofield and Anderson are ordered to separately submit proposed journal entries of judgment which shall include liquidated damages within ten (10) days from the date of this Memorandum and Order. Defendant shall then have ten (10) days to respond to plaintiffs' submissions.