973 F.2d 874
 Reid SCOFIELD, Plaintiff-Appellant, Cross-Appellee,
v.
TELECABLE OF OVERLAND PARK, INC., Defendant-Appellee, Cross-Appellant,
National Cable Television Association, Inc.; G. Ray Warner,
Professor, Amici Curiae.
Debbie D. ANDERSON, Plaintiff-Appellant, Cross-Appellee,
v.
TELECABLE OF OVERLAND PARK, INC., Defendant-Appellee, Cross-Appellant,
National Cable Television Association, Inc.; G. Ray Warner,
Professor, Amici Curiae.
 Nos. 91-3014 through 91-3017.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 26, 1992.
As Corrected Sept. 4, 1992.
 
 Steven D. Treaster, Lenexa, Kan., for plaintiffs-appellants, cross-appellees.
 Frances J. Chetwynd of Cole, Raywid & Braverman, Washington, D.C. (Paul Glist and Lynn S. Friedman, Cole, Raywid & Braverman, Washington, D.C., R. Kent Sullivan and James W. Howard, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., with her on the briefs), for defendant-appellee, cross-appellant.
 Ronald L. Plesser, Emilio W. Cividanes, Mary E. Brobson, Piper & Marbury, Washington, D.C., and Brenda L. Fox and Loretta P. Polk, National Cable Television Ass'n, Inc., Washington, D.C., on the brief for amicus curiae, National Cable Television Ass'n, Inc.
 G. Ray Warner, Associate Professor of Law, University of Missouri-Kansas City, Kansas City, Mo., on the brief for amicus curiae, G. Ray Warner.
 Before ANDERSON, TACHA, and BALDOCK, Circuit Judges.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 In this appeal, we are asked to interpret the subscriber privacy notice provisions and the remedial provisions of section 631 of the Cable Communications Policy Act of 1984 (the "Act"), 47 U.S.C. § 551 ("section 551"). TeleCable of Overland Park, Inc. ("TeleCable") and the plaintiffs below, Reid Scofield and Debbie D. Anderson ("plaintiffs"), appeal from a district court order granting in part and denying in part the parties' cross-motions for summary judgment. See Scofield v. TeleCable of Overland Park, Inc., 751 F.Supp. 1499 (D.Kan.1990) ("Scofield "). The principal questions before us are whether two forms of subscriber privacy notices mailed by TeleCable in 1988 and 1989 violated the section 551(a) notice requirements, see 47 U.S.C. § 551(a)(1)(A)-(E), and if so, whether the district court properly awarded each plaintiff $1000 in liquidated damages for each violation, see 47 U.S.C. § 551(f)(2)(A). We conclude that both notices, taken as a whole, satisfied the section 551(a) notice requirements. Accordingly, we do not reach the issue of damages, and we reverse the district court's judgment.
 
 I.
 
 2
 In their complaints, plaintiffs challenge the adequacy of two different forms of subscriber privacy notices (or "SPNs") that TeleCable sent them as required by section 551(a) of the Act.[1] One form, the "pre-1989 SPN" received by plaintiffs in 1988, was issued by TeleCable from 1985 to 1988. See Appendix A to this opinion. A second revised form, the "1989 SPN," was issued by TeleCable and received by plaintiffs in 1989. See Appendix B to this opinion. Plaintiffs concede that TeleCable's alleged faulty notices have not caused them any actual harm. Nor would the full and complete disclosure demanded by plaintiffs reveal any practice that violates law or intrudes upon the plaintiffs' substantive privacy interests. Rather, plaintiffs look to the alleged violation of the notice provisions itself as the source of their injury--an injury that each seeks to remedy with a liquidated damages award of $73,000, the amount to which they claim the statute entitles them.
 
 A. STATUTORY BACKGROUND
 
 3
 In 1984, Congress enacted the Cable Act to establish national policy and guidelines for the cable television industry. Section 551 of this Act establishes a self-contained and privately enforceable scheme for the protection of cable subscriber privacy. The section was included in the Act in response to Congress' observation that: "Cable systems, particularly those with a 'two-way' capability, have an enormous capacity to collect and store personally identifiable information about each cable subscriber." H.R.Rep. No. 934, 98th Cong., 2d Sess. 29 (1984) U.S.Code Cong. & Admin.News 1984, pp. 4655, 4666. "Subscriber records from interactive systems," Congress noted, "can reveal details about bank transactions, shopping habits, political contributions, viewing habits and other significant personal decisions." Id.
 
 
 4
 Consequently, Section 551 regulates four types of cable company practices involving "personally identifiable information."[2] Most importantly, it limits the cable company's ability to use its system to "peer in" on the cable viewer and collect personally identifiable information such as the subscriber's viewing habits or the nature of transactions made by the subscriber over the cable system, and it limits the types of third-party disclosure that can be made of information the cable company has collected. See 47 U.S.C. § 551(b), (c). Section 551 also requires that cable operators provide subscribers access to personally identifiable information collected and maintained by them, see 47 U.S.C. § 551(d), and it mandates that operators destroy personally identifiable information that is no longer necessary for the purpose for which it was collected, see 47 U.S.C. § 551(e).
 
 
 5
 In addition, section 551(a) establishes a set of subscriber notice requirements designed to inform subscribers of (1) the operator's information practices that affect subscriber privacy, (2) the subscriber's rights to limit the collection and disclosure of information, (3) the operator's legal duties, and (4) the subscriber's right to enforce those duties. These requirements do not themselves create a class of protected privacy interests. That is, subscribers have no privacy interest in receiving a notice itself. Nor can one infer from the failure to provide a privacy notice that an operator's practices in any way intrude upon subscriber privacy. Instead, the notice requirements provide "procedural safeguards to consumers for the protection of their privacy interests." H.R.Rep. No. 934, 98th Cong., 2d Sess. 77 (1984) U.S.Code Cong. & Admin.News 1974, pp. 4655, 4714.B. TELECABLE'S INFORMATION PRACTICES
 
 
 6
 1. Collection of Personally Identifiable Information.
 
 
 7
 It is undisputed that TeleCable's system is a non-interactive "one-way" system. As opposed to "two-way" systems, TeleCable's system is capable only of transmitting television signals into subscriber homes. Subscribers cannot send messages over the system. TeleCable cannot receive or collect signals from subscribers or monitor how often a subscriber tunes into the system. Therefore, TeleCable cannot "use the cable system to collect personally identifiable information" concerning its subscribers, and the limits found in section 551(b) on the collection of personally identifiable information are inapposite.[3] See 47 U.S.C. § 551(b). Further, TeleCable is not capable of disclosing "the extent of viewing or other use by the subscriber of a cable service or other service" or "the nature of any transaction made by the subscriber over the cable system of the cable operator," as prohibited by section 551(c). See 47 U.S.C. § 551(c)(2)(C)(ii)(I), (II).
 
 
 8
 The only information TeleCable collects is information that the subscriber has furnished or that TeleCable maintains in the ordinary course of business. This collected information includes a copy of the initial work order (retained for one year after installation of service); the subscriber's name, address, and telephone number; the subscriber's account number, initial level of service (premium channel and pay-per-view events) and the level of service at the time of disconnection; information relating to the location of the cable outlet, number and physical location of the cable outlets, date of installation, date of disconnection, billing dates, the aging of the subscriber's account, the billing and payment history, refund history, record of requests to TeleCable; whether the subscriber was an owner or renter (to determine whether a landlord's permission may be needed to make installations); the date bills (and inserts) were mailed; converter record; whether the subscriber was a new or "restart" customer; whether the subscriber requested removal of his name from subscriber lists for privacy reasons. TeleCable's parent corporation occasionally conducts telephone market research surveys for TeleCable to determine current subscriber satisfaction. Survey data is listed in the aggregate, but seriously dissatisfied subscribers are identified to TeleCable's local office to attempt to resolve problems with the subscriber. TeleCable does not collect and maintain any personally identifiable information concerning the age, sex, race, income or political affiliation, or any other demographic data of any subscriber.
 
 
 9
 2. Retention of Data.
 
 
 10
 TeleCable had no written policy regarding the retention and destruction of subscriber information when this action commenced. As set out in the SPNs, however, its general policy is to keep such information so long as TeleCable provides service to the subscriber and "for a longer time if necessary for our business purposes." 1989 SPN. TeleCable's principal repository of subscriber information is an electronic data base or Management Information System ("MIS"). Under the MIS, non-current information is periodically purged from the system to make additional disk space. Ledger data (billing data), for instance, is retained in a subscriber file for 60-90 days.
 
 
 11
 TeleCable also has supplementary record systems. Some data is kept on "hard copy" for different periods of time depending on TeleCable's asserted business need. The only hard copy item kept for longer than one year is the converter receipt, which is kept until the subscriber returns the equipment. TeleCable also maintains historical accounting and billing data in microfiche form for reference purposes. Special equipment is needed to make copies, and TeleCable does not have such equipment in Overland Park. TeleCable presently has microfiche records for each month since the Act was passed. It maintains two copies of the microfiche data, one copy at the corporate headquarters of TeleCable's parent and one copy at TeleCable's system offices in Overland Park. TeleCable has not destroyed this information for the stated reason that to do so would be contrary to federal law requiring retention of financial records.[4]
 
 
 12
 3. Disclosure to Third Parties.
 
 
 13
 With regard to TeleCable's disclosure of subscriber information to third parties, TeleCable generally states that it does not release subscriber names and addresses or other information to any third party except in connection with rendering cable service. TeleCable offers subscribers the option to be removed from the subscriber list before any disclosure is made to non-cable services. TeleCable does provide subscriber information to an independent billing house to send bills and independent contractors to install cable service, and it may on occasion disclose information to accountants, franchising authorities or attorneys. Authorized TeleCable employees may access subscriber data for routine administrative needs such as responding to subscriber inquiries, trouble calls, complaints, and orders for change in service. TeleCable also provides mailing labels to premium channels for purposes of sending program guides. On several occasions prior to the 1984 Act, TeleCable allowed Johnson County Community College to use its subscriber list to mail information to subscribers about the credit courses offered over the cable system by the college. The parties agree that no such disclosure has been made since the passage of the Act. Further, on several occasions over the last several years, TeleCable has allowed (without charge) a local consumer research organization retained by NBC to use TeleCable's subscriber list (excluding names of subscribers who requested to be removed from the privacy lists) to carry out research concerning programs shown on the cable system. TeleCable claims that it never rents or sells its list of subscribers.
 
 
 14
 4. Subscriber Access to Data.
 
 
 15
 TeleCable's office hours at Overland Park are Monday through Thursday from 8:30 a.m. to 8:00 p.m., Friday from 8:30 a.m. to 5:00 p.m., and Saturday from 8:30 a.m. to 1:00 p.m. TeleCable has never received a request from a subscriber for subscriber information in TeleCable's possession. If such a request were received, TeleCable has stated that it would most probably offer the subscriber use of a supervisor's office to view such information.
 
 II.
 
 16
 Plaintiffs insist, and the district court held, that both the pre-1989 and the 1989 SPNs fail to satisfy the notice requirements set out in section 551(a). "We review the grant or denial of summary judgment de novo. We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c)." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990) (citations omitted). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law," Rusillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991), but "we must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Investments, Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991).
 
 
 17
 Under section 551(a), a cable operator is required to provide its subscribers with a privacy notice when they first subscribe and once every year thereafter. This notice must satisfy five specific notice requirements or guidelines set forth in the section. The notice must "clearly and conspicuously" inform the subscriber of:
 
 
 18
 (A) the nature of personally identifiable information collected or to be collected with respect to the subscriber and the nature of the use of such information;
 
 
 19
 (B) the nature, frequency, and purpose of any disclosure which may be made of such information, including an identification of the types of persons to whom the disclosure may be made;
 
 
 20
 (C) the period during which such information will be maintained by the cable operator;
 
 
 21
 (D) the times and place at which the subscriber may have access to such information in accordance with subsection (d) of this section; and
 
 
 22
 (E) the limitations provided by this section with respect to the collection and disclosure of information by a cable operator and the right of the subscriber under subsections (f) and (h) of this section to enforce such limitations.
 
 
 23
 47 U.S.C. § 551(a)(1)(A)-(E).
 
 
 24
 The plaintiffs and TeleCable fundamentally dispute the proper analysis to be followed in measuring the notice's compliance with these guidelines. At the root of this dispute lies the requirement that the privacy notice be "clear and conspicuous." To determine what this standard requires, all parties have turned to the Federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., and its accompanying Regulation Z, 12 C.F.R. § 226, where the standard figures prominently.[5] From TILA, all parties have concluded that to be "clear and conspicuous" the notice must provide "meaningful disclosure."[6] See 15 U.S.C. § 1601(a) ("It is the purpose of [TILA] to assure a meaningful disclosure of credit terms...." (emphasis added)).
 
 
 25
 In several instances, plaintiffs assert that TeleCable's notices are neither "clear and conspicuous" nor "meaningful" because their notices are too broad and vague to provide a subscriber any meaningful understanding of TeleCable's practices. However, TeleCable argues that in light of the statutory aims, as manifested by the statutory language and legislative history, the level of precision and detail should be measured under a standard of "reasonableness."
 
 
 26
 While we disagree with any suggestion that the similarity between section 551 and TILA requires a wholesale importation of TILA jurisprudence, we agree that "meaningful disclosure" is a reasonable way of describing the object of the clear and conspicuous standard. However, "we adopt a common sense approach, rather than a technical approach, in determining whether there has been a meaningful disclosure" of an operator's information practices. Cf. Brooks v. Maryville Loan & Fin. Co., 679 F.2d 837, 839 (11th Cir.1982) (interpreting TILA). What is "meaningful" in this context must be determined with regard to the statute we are interpreting and its purposes. In this regard, we make the following observations.
 
 
 27
 First, in determining whether a disclosure is sufficiently detailed or precise, we must look to the language of the applicable guideline, which is the primary source of any substantive disclosure obligation. If the guideline only requires, for instance, notice of the "nature" of information collected or "type" of person to whom disclosure may be made, the "clear and conspicuous" standard should not be read to require notice of every item of information collected or every person to whom disclosures may be made.
 
 
 28
 Second, to be "clear and conspicuous" or "meaningful" the disclosure should at least be such that the subscriber "could reasonably be expected to have ... understood its meaning." 15 U.S.C. § 1602(j) (TILA). See also Scofield at 1512 ("Under this standard, defendant's disclosure should be reasonably understandable to the ordinary person." (citation omitted)).
 
 
 29
 Third, in determining whether a disclosure is sufficiently precise or detailed, we must consider the statute's aim of protecting subscriber privacy. Logically, a disclosure is not sufficiently "clear and conspicuous" or "meaningful," if it is couched in terms so broad that it fails to warn an ordinary subscriber of practices that materially affect his privacy interests. Conversely, unless a guideline specifically requires it, "meaningful" disclosure does not require the addition of information that is redundant or marginally useful to a person of ordinary sensibilities. See Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 568, 100 S.Ct. 790, 798, 63 L.Ed.2d 22 (1980) ("Meaningful disclosure does not mean more disclosure."). The virtue of "meaningful disclosure" is lost when the inclusion of too much information "result[§ in] a piece of paper which appears to be 'just another legal document' instead of the simple, concise disclosure form Congress intended." James v. Ford Motor Credit Co., 638 F.2d 147, 150 (10th Cir.1980) (citation omitted), cert. denied, 453 U.S. 901, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981).[7]
 
 
 30
 Finally, a disclosure does not fail to be "clear and conspicuous" or "meaningful" simply because a superior or more detailed statement could have been provided; the question is whether the disclosure offered is sufficiently clear for purposes of the statute.[8] Even under TILA, courts have held that "perfect disclosure" is not required. Gambardella v. G. Fox & Co., 716 F.2d 104, 118 (2d Cir.1983). "The question is not whether something is capable of semantic improvement but whether it contains a substantial and accurate disclosure...." Dixon v. D.H. Holmes Co., Ltd., 566 F.2d 571, 573 (5th Cir.1978). See also Smith v. Chapman, 614 F.2d 968, 972 (5th Cir.1980) ("Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation.").
 
 
 31
 The district court held that TeleCable's privacy notices failed to comply with each of the five guidelines of Section 551(a)(1). We respectfully disagree. Under the standards discussed above, we conclude that both forms of privacy notices adequately satisfied the guidelines found in subsections (A) through (E).
 
 Subsection A
 
 32
 Subsection (A) requires the operator to clearly and conspicuously inform the subscriber of the "nature of personally identifiable information collected" and the "nature of the use of such information." Section 551(a)(1)(A) (emphasis added). The notices did both.
 
 
 33
 The pre-1989 SPN, for example, disclosed that TeleCable maintained certain items of information, such as the name, address, and "other personally identifiable information" (or alternatively "information about you"), such as billing and payment information, the number of television sets connected to cable, and service options. Since all of the information that TeleCable collects is of this same nature, these illustrations were sufficient.
 
 
 34
 As to the nature of the use of this information, the pre-1989 notice offers two explanations: first, records containing the personally identifiable information are used "[i]n order that we may continue to provide reliable, high quality service to you," and second, "[w]e use this information to make sure that you are being billed properly for the services you receive." Again, from these explanations a reasonable subscriber would be led to believe that the information collected is used routinely in the ordinary course of business. Any further explanation, like that found in the 1989 SPN, that TeleCable used the information "to sell, maintain, disconnect, and reconnect services; to make sure that you are being billed properly for the services you receive; and to maintain financial, accounting, tax, service and property records," would be superfluous, adding no new information of practices of a different nature that may affect subscriber privacy.
 
 Subsection B
 
 35
 Subsection (B) requires that the privacy notice clearly and conspicuously disclose the "nature, frequency, and purpose of any disclosure ... including an identification of the types of persons to whom the disclosure may be made." Section 551(a)(1)(B).
 
 
 36
 The pre-1989 SPN notified subscribers that personally identifiable information may be disclosed if "necessary to render cable service and other services we provide to you and related business activities." To illustrate, the notice stated: "(For example, we may without your consent disclose your name and address to a collection service if required to collect past due bills.)."
 
 
 37
 The notice did not exhaustively enumerate the specific parties to whom disclosure might be made. Nor was it required to. Subsection (B) only requires the notice to identify the "types of persons" to whom disclosure may be made. The types of persons described in the notice are "third parties," such as a "collection service," who must "render cable service" or carry out "related business activities." These descriptions notify the ordinary subscriber that information about them would be disclosed to third parties, in the ordinary course of business, for ordinary business purposes, at a frequency dictated by the particular business need. Nearly all of TeleCable's disclosures fall into this category.[9]
 
 
 38
 However, TeleCable's disclosure of its subscriber list to the consumer research organization retained by NBC is arguably not of this same "nature." It is not immediately clear that a subscriber lacking familiarity with the cable industry might anticipate that these disclosures are "necessary to render cable service."[10] However, we find that the privacy notices adequately notified subscribers of this type of disclosure when they later stated: "Unless you object, from time to time, we may also disclose your name and address for mailing lists and other purposes permitted by law.... If you wish to remove your name from such lists or limit the use of your name at any time, please contact us at the system office." E.g., Pre-1989 SPN. This statement notifies subscribers of precisely the type of disclosure made to the research organization. TeleCable does not disclose to the research organization the names of those subscribers who have asked to have their names removed from these lists. This notice of disclosure satisfied subsection (B).
 
 Subsection C
 
 39
 Subsection (C) requires that the notices state "the period during which such information will be maintained by the cable operator." Section 551(a)(1)(C).
 
 The pre-1989 SPN states:
 
 40
 5. We will maintain information about you for as long as we provide service to you, and for a longer time if necessary for related business activities. When information is no longer necessary for our purposes, we will destroy the information unless there is a legitimate request or order to inspect the information still outstanding.
 
 
 41
 The 1989 SPN is substantially the same.
 
 
 42
 As the notices suggest, most of the information TeleCable collects about a subscriber is destroyed periodically, after TeleCable ceases to provide service to the subscriber. For example, any readily retrievable, electronically stored information is destroyed 60-90 days after a subscriber terminates service. Other information, which poses little or no threat to subscriber privacy because of the format in which it is stored, is retained in the historical ledger microfiche at least six years for accounting and tax purposes. Given the unremarkable nature of information maintained, we cannot accept that a subscriber of ordinary sensibilities would demand a more rigorous explanation than that given. Consequently, the statement in the notices is sufficiently clear to notify subscribers of TeleCable's practice with regard to destroying information.[11]
 
 Subsection D
 
 43
 Subsection (D) requires the SPN to clearly and conspicuously state "the times and place at which the subscriber may have access to [subscriber] information." Section 551(a)(1)(D).
 
 The pre-1989 SPN states:
 
 44
 6. You have the right to inspect our records that contain information about you, correct any error in our information, and enforce your rights under federal law. If you wish to inspect the records at our system office pertaining to you, please contact us to set up an appointment during regular business hours.
 
 
 45
 The notices are sufficiently clear as to the "times" and "place" at which information may be reviewed. Any subscriber that desires to view collected information "during business hours" (the times) at "our systems office" (the place) will be able to do so.[12]
 
 Subsection E
 
 46
 Finally, subsection (E) requires that a cable operator clearly and conspicuously inform subscribers of "the limitations provided by this section with respect to the collection and disclosure of information by a cable operator and the right of the subscribers under subsections (f) and (h) of this section to enforce such limitations." Section 551(a)(1)(E).
 
 
 47
 We find that both SPNs adequately satisfy this requirement. Subsection (E)'s reference to "the limitations provided by this section with respect to the collection and disclosure of information" must be taken as a reference to the limitations found in section 551(b), entitled "Collection of personally identifiable information using cable system," and section 551(c), entitled "Disclosure of personally identifiable information."
 
 
 48
 Both SPNs summarize the conditions under which TeleCable may collect and disclose information. See Pre-1989 SPN, pp 2-3; 1989 SPN, pp 2-3. Certainly, TeleCable could have stated more clearly that these limits on what it may in fact do also define the outer limits of what it is permitted to do under federal law. However, the notices are sufficiently clear to inform a reasonable subscriber that this is the case. Both SPNs begin by informing subscribers that "you are entitled under federal law to know the following." Both end by informing subscribers of the ability to "enforce your rights under federal law." Given the nature of the limitations enumerated in the SPNs, and the references to federal law, the average subscriber is not likely to believe that these limitations are simply self-imposed. Rather, the average subscriber will likely understand that they are provided by federal law.
 
 
 49
 Subsection (E) also requires a statement of "the right of the subscriber under subsections (f) and (h) of this section to enforce such limitations." 47 U.S.C. § 551(a)(1)(E). As mentioned, both SPNs notify subscribers that they have enforceable rights under federal law, as provided by section 551(f).[13] In addition, both SPNs also notify subscribers of their right under section 551(h) to be notified before information may be disclosed pursuant to a court order.[14]
 
 
 50
 Accordingly, we find that, taken as a whole, both SPNs adequately satisfy the section 551(a) notice requirements. This is not to say that TeleCable's SPNs are model disclosure forms, because they are not. Many of TeleCable's descriptions lie dangerously close to the lowest limits of acceptable disclosure. Nor does it follow from our reasoning that these notices might serve any cable operator. As our discussion has revealed, the level of detail required to satisfy the guidelines is a function of the cable operator's practices. Here, the SPNs notified subscribers of the kinds of practices that might affect their privacy interests.
 
 
 51
 For the reasons stated above, the judgment of the district court is REVERSED.
 
 Appendix A:
 The Pre-1989 SPN
 TELECABLE
 Subscriber Privacy Notice
 
 52
 As a subscriber of cable services, you are entitled under federal law to know the following:
 
 
 53
 1. In order that we may continue to provide reliable, high quality service to you, we keep regular business records that contain your name, address, and other personally identifiable information. Such records include billing, payment and deposit records, records indicating the number of your television sets connected to cable, and the service options you have chosen. We use this information to make sure that you are being billed properly for the services you receive.
 
 
 54
 2. We consider information we keep to be confidential. We may collect personally identifiable information from you and may disclose it to a third party if (a) you consent in advance in writing or electronically; (b) disclosure is necessary to render cable service and other services we provide to you and related business activities; or (c) disclosure is required pursuant to a court order and you are notified of such order. (For example, we may without your consent disclose your name and address to a collection service if required to collect past due bills.)
 
 
 55
 3. Unless you object, from time to time, we may also disclose your name and address for mailing lists and other purposes permitted by law. We will not disclose the extent of your viewing or use of a particular service or the nature of any transaction you may make over the cable system, but we may disclose that you are among those who subscribe to a particular service. If you wish to remove your name from such lists or limit the use of your name at any time, please contact us at the system office.
 
 
 56
 4. We may also electronically test the system from time to time to determine whether you are being billed properly for the cable services you are receiving.
 
 
 57
 5. We will maintain information about you for as long as we provide service to you, and for a longer time if necessary for related business activities. When information is no longer necessary for our purposes, we will destroy the information unless there is a legitimate request or order to inspect the information still outstanding.
 
 
 58
 6. You have the right to inspect our records that contain information about you, correct any error in our information, and enforce your rights under federal law. If you wish to inspect the records at our system office pertaining to you, please contact us to set up an appointment during regular business hours.
 
 
 59
 # 4664
 
 2/86
 
 60
 Brief of Appellant, Attach. 2.
 
 Appendix B:
 The 1989 SPN
 TELECABLE
 Subscriber Privacy Notice
 
 61
 As a subscriber of cable services, you are entitled under federal law to know the following:
 
 
 62
 1. In order that we may continue to provide reliable, high quality service and maintain adequate records, we keep regular business records that contain your name, address, telephone number, and other personally identifiable information. Such records include billing, payment, deposit, complaint and service records, records of information you have furnished to us, such as the location and number of television sets connected to cable, and the service options you have chosen. We use this information to sell, maintain, disconnect and reconnect services; to make sure that you are being billed properly for the services you receive; and to maintain financial, accounting, tax, service and property records.
 
 
 63
 2. We consider information we keep to be confidential. We may collect personally identifiable information from you and may disclose it to a third party if (a) you consent in advance in writing or electronically; (b) disclosure is necessary to render cable service and other services we provide to you and related business activities; or (c) disclosure is required pursuant to a court order and you are notified of such order. We may make your records available routinely to employees, agents and contractors to install, market, provide and audit cable service; to an independent billing house to send bills; to a mail house to send program guides; to programmers and outside auditors to check our records; to attorneys and accountants as necessary to render service to the company; to purchasers in connection with a system sale; to franchising authorities to demonstrate compliance; and to collection services if required to collect past due bills. The frequency of disclosure varies according to business needs. We may also electronically test the system from time to time to determine whether you are being billed properly for the cable services you are receiving.
 
 
 64
 3. Unless you object, from time to time, we may also disclose your name and address for mailing lists and other purposes permitted by law. We will not disclose the extent of your viewing or use of a particular service or the nature of any transaction you may make over the cable system, but we may disclose that you are among those who subscribe to a particular service. If you wish to remove your name from such lists or limit the use of your name at any time, please contact us at the system office.
 
 
 65
 4. We will maintain information about you for as long as we provide service to you, and for a longer time if necessary for our business purposes. When information is no longer necessary for our purposes, we will periodically destroy the information unless there is a legitimate request or order to inspect the information still outstanding.
 
 
 66
 5. You have the right to inspect our records that contain information about you and to correct any error in our information. If you wish to inspect the records at our system office pertaining to you, please contact us to set up an appointment during regular business hours. Federal law limits the collection and disclosure of these records. If your rights under federal laws are violated, you may bring a private action in federal district court to remedy that violation. In addition, the government may obtain disclosure of personally identifiable information by court order, if it offers evidence that such records are material to a criminal case, and if you are given the opportunity to appear and contest the evidence.
 
 
 67
 TeleCable of Overland Park, Inc.
 
 8221 W. 119th Street (66213-1209)
 P.O. Box 12922
 Overland Park, Kansas 66212-0922
 
 68
 (913) 451-8787
 
 TC-165
 
 69
 Brief of Appellant, Attach. 3.
 
 
 
 [1]
 Plaintiffs also alleged that TeleCable never provided a SPN at the time of subscribing for cable services and that TeleCable did not properly destroy personally identifiable information as required by the Act. The district court refused to grant plaintiffs' motions for summary judgment on either ground, and neither issue is before us
 
 
 [2]
 While the term is not affirmatively defined by the Act, section 551(a)(2) provides that "[f]or purposes of this section, the term 'personally identifiable information' does not include any record of aggregate data which does not identify particular persons." 47 U.S.C. § 551(a)(2). In addition, the legislative history states that personally identifiable information "would include specific information about the subscriber, or a list of names and addresses on which the subscriber is included...." H.R.Rep. No. 934, 98th Cong., 2d Sess. 79, U.S.Code Cong. & Admin. News 1984, pp. 4655, 4716
 
 
 [3]
 The term "cable system" is a statutorily defined term of art. With certain exceptions, "the term 'cable system' means a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community...." 47 U.S.C. § 522(b). However, while section 551(b) limits the use of the cable system to collect personally identifiable information, the notice required by section 551(a)(1)(A) concerning the collection of personally identifiable information is not on its face limited to information collected through use of the cable system
 
 
 [4]
 Plaintiffs also claimed that TeleCable violated section 551(e) for not destroying information as required by that section. TeleCable asserted the need, which plaintiffs did not dispute, to maintain the information for at least 5-6 years. Since, plaintiffs terminated service in 1988 and 1989, less than 5-6 years prior to the action, the court found that the issue was not ripe for decision. Scofield at 1518
 
 
 [5]
 In fact, a "clear and conspicuous standard" is contained in various federal statutory provisions. See, e.g., 11 U.S.C. § 524; 12 U.S.C. § 1795f; 12 U.S.C. § 1831e; 12 U.S.C. § 2603; 12 U.S.C. § 2803; 15 U.S.C. § 68b; 15 U.S.C. § 1602; 15 U.S.C. § 2302; 15 U.S.C. § 2803; 18 U.S.C. § 2710; 39 U.S.C. § 3009; 42 U.S.C. § 7671j; 47 U.S.C. § 551
 
 
 [6]
 See Scofield at 1512; Br. of Appellant at 37; Joint Br. of Appellees at 12-14; see also Amicus Brief of National Cable Television Ass'n, Inc. at 5; Amicus Brief of Professor G. Ray Warner at 6
 
 
 [7]
 Borrowing a line from the legislative history not found on the face of the statute, plaintiffs argue that the statute requires "full and complete notification" by cable operators to subscribers of their information practices, see H.R. Rep. 934, 98th Cong., 2d Sess. 77 (1984) (emphasis added)
 However, the same legislative history reveals that Congress was chiefly concerned with the privacy implications of two-way systems. See H.R.Rep. No. 934, 98th Cong., 2d Sess. 76 (1984) ("[Section 551] applies to all individually identifiable information collected by a cable operator over the cable system regarding its subscribers, whether collected in the course of providing a cable service or other service to the subscribers." (emphasis added)); id. at 29 ("Cable systems, particularly those with a 'two-way' capability, have an enormous capacity to collect and store personally identifiable information about each cable subscriber."); see also S.Rep. No. 67, 98th Cong., 1st Sess. 28 (1983) ("Section 611 is not intended to impose unreasonable requirements. The committee believes that the principal potential problem is the opportunity to monitor subscriber viewing habits and then disclose such personally identifiable information without prior consent."). Indeed, one-way systems have no capacity to collect and store information about subscribers' viewing habits and transactions. Because of this, the statute itself contains provisions that apply only to two-way systems. See 47 U.S.C. § 551(b) (refers to collection of personally identifiable information "using cable system" which can only be done using two-way systems); 47 U.S.C. 551(b)(1), (c)(1) (reference to "electronic consent" which can only be given over two-way systems); id. at (c)(2)(C)(ii) (references to personally identifiable information such as the extent of subscriber viewing and transactions made over the cable system which cannot be collected using one-way systems).
 While statements in the legislative history and on the face of the statute indicate Congress' clear concern over two-way systems, plaintiffs rightly point out (and TeleCable agrees) that neither the term "cable operator" or "cable system," both statutorily defined terms, see 47 U.S.C. § 522(4) and (6), applies only to two-way systems. TeleCable is therefore required under section 551 to provide its subscribers with privacy notices.
 However, it does not follow that both types of systems must be treated equally in measuring the adequacy of disclosure. The emphasis found on the face of the statute and in the legislative history on two-way systems stems from the threat to privacy that two-way systems uniquely pose. Logically, to adequately inform subscribers of practices that concern their privacy, a disclosure involving two-way systems may be required to offer more information or greater detail than one involving a one-way system that poses little or no threat to subscriber privacy.
 
 
 [8]
 For example, the fact that TeleCable's subsequent SPNs are more clear than the pre-1989 SPN does not compel the conclusion that the pre-1989 SPN disclosures were not clear and conspicuous
 
 
 [9]
 For example, TeleCable was not required to state separately that it discloses information to an independent billing house to send bills, to independent contractors to install cable service, and to premium channels for purposes of sending program guides. See Scofield at 1514, 1515. Nor was the notice required to specifically mention disclosures made to programmers and auditors to check records, to attorneys and accountants, to purchasers in connection with a system sale, and to franchising authorities to demonstrate compliance. See 1989 SPN
 
 
 [10]
 Since section 551(c)(2)(C) prohibits cable operations from disclosing subscriber names and addresses to other cable services without first giving the subscriber the opportunity to prohibit or limit such disclosure, we must presume that in Congress' view, awareness of this type of disclosure may be material to the ordinary subscriber. Therefore, under our approach, it is appropriate to consider these disclosures as of another "nature" to another "type of person."
 
 
 [11]
 The statute does not require an independent accounting of every format or medium upon which a given item of personally identifiable information is stored, unless this information would be material to the ordinary subscriber. But we cannot accept that Congress had any privacy concern over the length during which work orders, installer checklists, or converter records are retained that would demand a more specific disclosure than that given. See Scofield at 1516
 
 
 [12]
 Plaintiffs make much of the absence of the address of the place on the face of the pre-1989 SPN. However, even absent the address, the notice still identifies the "place," which is all the guideline requires. Further, we are confident that the average layperson is capable of locating the TeleCable office, either by using the address on the envelope containing the notice or by using a telephone book
 
 
 [13]
 The pre-1989 SPN states: "You have the right to ... enforce your rights under federal law." The 1989 SPN states: "Federal law limits the collection and disclosure of these records. If your rights under federal laws are violated, you may bring a private action in federal district court to remedy that violation." We agree with TeleCable that the notices were not required to describe the available remedies or specifically cite the statute
 
 
 [14]
 The 1989 SPN states: "In addition, the government may obtain disclosure of personally identifiable information by court order, if it offers evidence that such records are material to a criminal case, and if you are given the opportunity to appear and contest the evidence." The pre-1989 SPN states: We "may disclose [information] to a third party if ... disclosure is required pursuant to a court order and you are notified of such order."