**METROVISION OF LIVONIA, INC., Plaintiff,**

**v.**

**John and Janet WOOD, Defendants.**

Civ. A. No. 94–70088.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 11, 1994.

Kenneth Harrison, David H. Frist, Plymouth, MI, for plaintiff.

Michael A. Rataj, Miller Canfield, Detroit, MI, for defendants.

*MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

GADOLA, District Judge.

Plaintiff Metrovision of Livonia, Inc. ("Metrovision") is suing defendants John and Janet Wood for cable piracy. Metrovision is seeking recovery of damages and injunctive relief pursuant to 47 U.S.C. §§ 553 and 605 for unauthorized reception of cable services. Defendants have filed a counter-claim seeking damages for alleged violations of 47 U.S.C. § 551(a) and (d) involving disclosure requirements imposed upon cable companies. Before the court are defendants' motion for summary judgment on Metrovision's claims under sections 553 and 605 and Metrovision's motion for partial summary judgment on defendants' counter-claim. Pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Jan. 1, 1992), the court has dispensed with oral argument and will decide the parties' motions on the briefs. For the reasons discussed below, the court will grant in part Metrovision's motion and deny defendants' motion.

## I. Background

Metrovision is a supplier of cable television services in the suburban Detroit area. John and Janet Wood were cable customers who subscribed to Metrovision's service from December 17, 1990 through November 6, 1993. Metrovision contends that from approximately February 22, 1993 until November 6, 1993, defendants used an unauthorized "black box" descrambler to intercept premium cable channels and pay-per-view events without its permission. Metrovision is seeking $22,767.11 in actual damages or, in the alternative, unspecified statutory damages. The amount of actual damages sought equals the subscription cost of all of the intercepted premium channels as well as the cost of each pay-per-view event from February 1993 through November 1993. Defendants claim that they are not cable pirates and that they never used an unauthorized "black box" descrambler.

Metrovision began to investigate defendants on October 21, 1993 when it received an anonymous tip over a 1–800 hotline for reporting cable theft. The anonymous tipster reported that defendants had bought an unauthorized descrambler from a relative and were using it to intercept premium cable channels.

As a result of the tip, Metrovision sent four of its employees to defendants' home in the early evening of November 6, 1993 to investigate. Without defendants' knowledge, Metrovision employees disconnected defendants' cable line. The investigators then attached a Time Domain Reflectometer ("TDR"), an electronic monitoring device that detects the use of unauthorized cable equipment, to the cable attached to defendants' home.

Metrovision employees then called defendants over the telephone to inform them that their cable was out and that a work crew was working on the problem. About ten minutes later, Metrovision employees knocked on defendants' door and asked to see their cable equipment so that they could work on the previously announced problem. Apparently, Metrovision uses this ploy in an effort to get cable pirates to remove unauthorized black boxes from cable lines. Metrovision claims that once cable thieves remove the devices from their cable outlets that the TDR device will detect and record the signals given off. The TDR can detect the signature of the device and tell Metrovision whether its customer is using an unauthorized black box. In any event, Janet Wood answered the door on the evening of November 6, 1993 and refused to allow Metrovision employees to inspect the cable equipment.

According to the deposition of a Metrovision employee, the TDR record shows that defendants had an unauthorized black box hooked up to their cable system on November 6, 1993. The employee also states that during the evening, while Metrovision investigators were visiting defendants' home, the device was removed from the cable system.

Besides the evidence supplied by the TDR readings, Metrovision also points to the defendants' prior cable subscription history in support of its claim of cable piracy. Before February 22, 1993, defendants were heavy

users of premium cable services provided by Metrovision. In addition to basic cable, defendants subscribed to HBO, Showtime, Cinemax, FLIX, PASS, and The Disney Channel. On February 22, 1993, however, defendants terminated all six of these premium channels. For the three years prior to February 1993, defendants had intermittently subscribed to all of these premium channels for varying periods of time.

Defendants have filed a motion for summary judgment on Metrovision's claims under 47 U.S.C. §§ 553 and 605. Defendants contend that there is no evidence that shows that they ever possessed an illegal black box. In addition, defendants contend that Metrovision cannot possibly prove that they ever watched any of the premium cable channels or pay-per-view events for which it claims damages from February 22, 1993 through November 6, 1993.

Besides denying Metrovision's allegations, defendants have filed a counter-claim for violations of 47 U.S.C. § 551(a) and (d). Defendants contend that they were damaged by Metrovision's alleged failure to provide privacy disclosure information required by section 551(a). Furthermore, defendants claim that Metrovision failed to promptly provide them with copies of the TDR records taken during the investigation on November 6, 1993. Metrovision argues that it deserves summary judgment on defendants' counterclaim because it fulfilled all of the necessary disclosure requirements and because it was not required to immediately release TDR records when it was contemplating litigation.

## II. Standard of Review

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the]

application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for sum-

mary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

### A. Defendants' Motion for Summary Judgment

In its complaint, Metrovision is seeking relief against defendants pursuant to 47 U.S.C. §§ 553 and 605 for unauthorized interception of cable communications. Section 553(a)(1) provides that "[n]o person shall intercept or receive ... any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Any cable operator, such as Metrovision, aggrieved by any violation of section 553(a)(1) may bring a civil action in order to recover damages and other relief. *Id.* § 553(c). Section 605 is similar to section 553, but it specifically provides as follows: "no person receiving ... any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception." *Id.* § 605(a). In essence, Metrovision contends that defendants violated sections 553 and 605 when they attached an unauthorized black box descrambler to its cable system in order to receive premium cable channels and pay-per-view events without its permission and without having to pay for those services.

█ In their motion, defendants are seeking summary judgment on the basis that there is no evidence that they placed an unauthorized device on their cable system or that they used such a device from February 22, 1993 through November 6, 1993. In addition, defendants contend that there is no evidence that shows that they watched all of the pay-per-view events and premium cable channels that were available on Metrovision's cable system between February and November of 1993. Defendants argue that Metrovision cannot produce even a "scintilla" of evidence to support its claims, and that there "is not enough evidence to have even filed the complaint."

The court finds, however, that defendants have failed utterly in demonstrating a lack of genuine issues of material fact. Metrovision has presented more than sufficient evidence to support its claims against defendants under sections 553 and 605. Defendants have presented nothing to dispute the TDR findings and the supporting testimony of Metrovision investigators. Much of defendants' brief is spent arguing the proper amount of damages that Metrovision deserves, rather than persuasively contesting their own liability under the two cable statutes.[1] Evidence from the TDR tests conducted at defendants' home indicates that defendants' used an unauthorized device to intercept Metrovision's cable signals over an unauthorized channel of transmission. As a result, defendants have failed to demonstrate the absence of a genuine issue of material fact that would merit summary judgment in their favor.

---

1. The court does agree with defendants' contention that a jury trial is proper if Metrovision seeks recovery of actual damages rather than the statutory damages set forth in sections 553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II). The court is persuaded by the decision in *Storer Cable Comm. v. Joe's Place Bar & Restaurant,* 819 F.Supp. 593 (W.D.Ky.1993), where the court held that there is no statutory or constitutional requirement for a jury trial in cable cases where

a plaintiff seeks only statutory damages. In its amended complaint, Metrovision has plead actual and statutory damages in the alternative. However, in one of its briefs, Metrovision stated that were the court persuaded by the *Storer* decision, then it would only be seeking statutory damages. Because the court will follow the *Storer* decision, Metrovision's claims will be resolved through a bench trial for statutory damages under section 553(c).

## B. Metrovision's Motion for Summary Judgment

In their counter-claim, defendants contend that Metrovision failed to provide annual privacy disclosure statements and failed to turn over information collected by the TDR device in violation of 47 U.S.C. § 551(a) and (d). Metrovision is seeking summary judgment on each of defendants' claims. The court will address each claim in turn.

### 1. Section 551(a): Annual Disclosure Statements

Section 551(a) requires cable operators to provide notice to cable subscribers, in the form of a written statement, of the various procedures that it uses in collecting and disclosing personally identifiable information. Defendants contend that Metrovision never sent them an annual statement and did not provide the required information when they first became subscribers as mandated by the statute.[2]

■ In its motion for summary judgment, Metrovision contends that it provides all of its cable subscribers with annual privacy disclosure statements as required by section 551(a). In support of this assertion, Metrovision has submitted the affidavit of its employee, Daniel Dinsmore. Dinsmore states that all Metrovision subscribers receive the required privacy notices and that all new subscribers receive a booklet that contains the same information. In response, defendants submitted Janet Wood's affidavit in which she declares unequivocally that neither she nor her husband have ever received any privacy disclosure notices from Metrovision.

The court finds that defendants have raised a genuine issue of material fact as to whether they were ever sent the privacy notices required under section 551(a) by Metrovision. The parties have submitted affidavits that are in direct conflict, thereby requiring submission of the dispute to the finder of fact.

■ Although defendants have raised a genuine issue of material fact regarding their receipt of privacy notices, the court finds that there is no evidence supporting any claim by defendants for an award of actual or punitive damages based on Metrovision's alleged violation of section 551(a). Defendants have not demonstrated that they suffered any actual damages, or that they are deserving of punitive damages as a result of Metrovision's alleged failure to mail them annual privacy statements. Indeed, as the court noted in *Warner v. American Cablevision*, 699 F.Supp. 851, 859 (D.Kan.1988), "it is difficult to conceive of how a subscriber might suffer 'actual' injury as a result of a cable operator's failure to timely provide the subscriber with the proper disclosures as required by section 551(a)(1)." As a result, defendants are limited to seeking only recovery of statutory damages and attorney fees under section 551(f)(2).

■ As the court noted above, claims under the Cable Act are to be tried before the court as bench trials rather than before a jury where defendants are seeking statutory relief and not actual damages. *Storer Cable Comm. v. Joe's Place Bar & Restaurant*, 819 F.Supp. 593 (W.D.Ky.1993). Thus, both Metrovision's claim and defendants' counter-claim will be tried before this court and not a jury.

### 2. Section 551(d): Access to TDR Records

■ Section 551(d) requires that a cable subscriber shall be provided access to all personally identifiable information regarding that subscriber which is collected and maintained by a cable operator. Such information shall be made available to the subscriber at reasonable times and at a convenient place designated by such cable operator.

*Id.* Defendants allege that during settlement negotiations between their attorney and counsel for Metrovision in December 1993 Metrovision offered not to sue for cable theft if defendants would pay a monetary settlement. Defendants' attorney then de-

---

2. Defendants do not claim that the privacy notice Metrovision claims it distributed is in any way inadequate under the terms of section 551(a)(1).

clared that he would not negotiate further until he had an opportunity to look at the TDR records produced by Metrovision investigators in November 1993. Metrovision then filed suit in January 1994, and it sent the TDR records to defendants in March 1994 in response to document requests. Defendants contend that Metrovision's failure to immediately turn over the TDR records amounts to a violation of section 551(d).

█ The court finds, however, that defendants have failed to establish that Metrovision violated section 551(d). Section 551(d) only governs access to personally identifiable information, and the electronic signature generated by a TDR device that shows the illegal use of a cable system does not fall into this category. The court is forced to resort to the legislative history because the Cable Act does not define the term "personally identifiable information." The legislative history of the Cable Act indicates that the strictures of section 551 were intended to protect the privacy interests of individual subscribers as it relates to "details about bank transactions, shopping habits, political contributions, viewing habits and other significant personal decisions." H.R.Rep. No. 934, 98th Cong., 2d Sess. 29 (1984), U.S.Code Cong. & Admin.News 1984, pp. 4655, 4666; *see Scofield v. Telecable of Overland Park, Inc.,* 973 F.2d 874, 876 & 880 n. 7 (10th Cir.1992). In addition, "the principal potential problem" that section 551 was meant to address is the "opportunity to monitor subscriber viewing habits and then disclose such personally identifiable information without prior consent." S.Rep. No. 67, 98th Cong., 1st Sess. 28 (1983). With this guidance and with an application of common sense, the court is convinced that an electronic signal that shows that an illegal black box has been

attached, without permission, to Metrovision's cable system is not personally identifiable information.[3] This information is not the kind of data meant to be protected by the requirements of section 551(d). As a result, the court will grant Metrovision's motion for summary judgment on defendants' claims under section 551(d).

Even if the TDR signature records can be considered personally identifiable information, the court finds that defendants have failed to establish that Metrovision did not comply with section 551(d). Under Metrovision's policies regarding privacy, subscribers may review any personal information, and may request correction of any errors in such information, at its local business office during regular hours after an appointment is arranged over the telephone.[4] Defendants have submitted no evidence that they attempted to follow this procedure which appears to be made available to subscribers at reasonable times and at a convenient location as required by section 551(d). In their counter-claim, defendants merely assert that Metrovision did not bring the correct TDR record to their lawyer after he demanded that it be brought to him as a condition of further settlement negotiations. Metrovision's failure to meet this demand does not, under the clear language of the statute, constitute a violation of section 551(d). As a result, even if the TDR record is personally identifiable information, defendants have failed to establish that Metrovision withheld it from them in a way that would violate section 551(d).

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **DENIED.**

---

**3.** In essence, the court is merely finding that electronic evidence of cable piracy is not the same thing as the disclosure of information showing that a particular subscriber watches three hours of the Playboy Channel every night followed by two hours of a pay-per-view Wrestlemania contest. Congress meant to protect the privacy interests of individuals by preventing the disclosure of consumer viewing habits, not by hindering the investigation of cable theft.

**4.** Although defendants claim that they never received notice of Metrovision's policies with re-

gard to reviewing personal information, damages for this alleged violation are sought under section 551(a). In their claim under section 551(d), however, defendants are claiming that Metrovision did not provide them with an opportunity to review personal information. Dinsmore's affidavit and the attached privacy notice are the only evidence submitted by the parties regarding the availability of the review of personal information. As a result, there is no genuine issue of material fact regarding Metrovision's compliance with section 551(d).

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment is **GRANTED** in part as to defendants' claims under 47 U.S.C. § 551(d) and **DENIED** in part as to their claims under 47 U.S.C. § 551(a)(1). Defendants' counter-claim for violation of 47 U.S.C. § 551(d) is **DISMISSED** with prejudice.

**SO ORDERED.**